358 F.2d 432
 WINCHESTER DRIVE-IN THEATRE, INC., Syufy Enterprises, Inc.,
Rancho Drive-In Theatre, Inc., and Bell Drive-In
Theatre, Inc., Appellants,
v.
WARNER BROS. PICTURES DISTRIBUTING CORPORATION, Appellee.
 No. 19762.
 United States Court of Appeals Ninth Circuit.
 March 21, 1966.
 
 Joseph L. Alioto, G. Joseph Bertain, Jr., Matthew P. Mitchell, San Francisco, Cal., for appellants.
 Noble K. Gregory, Allan N. Littman, William I. Edlund, Walter R. Allan, of Pillsbury, Madison & Sutro, San Francisco, Cal., for appellee.
 Before BARNES, BASTIAN and MERRILL, Circuit Judges.
 MERRILL, Circuit Judge:
 
 
 1
 This action was brought by appellants under the antitrust laws. Appellee defended upon the ground, among others, that the parties had entered into an agreement of settlement which appellee had fully performed. A separate jury trial was ordered on this issue, resulting in a jury verdict in favor of appellee. The District Court held further hearings on appellee's counterclaim for costs and damages and entered final judgment in appellee's favor, from which this appeal is taken.
 
 
 2
 Appellants' position is that the antitrust suit was not settled. In the trial court they disputed the terms of the settlement agreement as alleged by appellee. They also maintained that there was no performance by appellee and asserted that the agreement in any event was barred by the statute of frauds. Before this court they first contend that as a matter of law the statute of frauds makes the settlement agreement unenforceable. Second, they argue that even if the contract is not unenforceable as a matter of law, the instructions to the jury in regard to the statute of frauds were erroneous. Third, they challenge the award of damages to appellee.
 
 
 3
 Appellants are four corporations engaged in the operation of drive-in motion-picture theatres. They brought this suit against appellee alleging a combination and conspitacy in violation of sections 1 and 2 of the Sherman Act, with regard to the distribution and exhibition of motion pictures. They claimed damages arising out of discrimination in film-licensing practices in furtherance of those antitrust violations. The discrimination alleged was that appellee refused to make its pictures available to appellants' theatres in San Jose, Sacramento and Oakland, California, at the same time that they were made available to downtown theatres in those cities.
 
 
 4
 On October 10, 1961, a settlement conference was held in New York City and it is conceded that an oral agreement was then reached as to the manner in which films were, for a two-year period, to be distributed in the three cities with which the suit was concerned. Appellee thereupon altered its distribution methods in those cities to conform to the agreement. On October 25, 1961, appellee's New York attorney sent a letter to counsel for appellants reciting the terms of settlement as he understood them. Later, appellee's San Francisco attorney wrote counsel for appellants requesting that copies of the October 25 letter be executed and returned to him. A form of covenant not to sue was enclosed with a request for its execution. The attorney also stated that when these documents were executed appellants would be handed a check in the amount of $2,000 pursuant to the agreement.
 
 
 5
 On August 8, 1962, appellants advised appellee that they disagreed that suit had been settled. A second suit relating to distribution practices in San Francisco was also pending did it was appellants' understanding, they stated, that the agreement had covered San Francisco as well as the three cities with which the case at bar was concerned and that settlement terms thus covered settlement of both suits. Since appellee had not altered its San Francisco distribution practices appellants advised that the settlement documents would not be delivered until that had occurred.
 
 
 6
 Thus, upon trial, the issue for the jury was as to the terms of the October 10 agreement. Did it or did it not extend to San Francisco? Was settlement of both suits a condition to settlement of either? Testimony as to what had transpired at the settlement conference was in dispute.
 
 
 7
 From the outset appellants made clear their position that the agreement of settlement (irrespective of its scope and terms) was in violation of the California statute of frauds since it was not in writing and was not performable within one year.[1] Appellee's answer to this argument has consistently been that its full performance of the agreement rendered the statute of frauds inapplicable.[2] Since appellants conceded full performance as to San Jose, Sacramento and Oakland, the sole issue was as to the scope of the agreement. This was the view of the District Court.[3] The court instructed the jury as follows:
 
 
 8
 '* * * the only issue to be determined by you is whether or not an agreement of settlement was made between plaintiffs and Warner Bros., and whether or not Warner Bors. Performed the terms of that agreement.
 
 
 9
 That you may be apprised of the respective theories of the plaintiffs and of Warner Bros., and subject to the instructions I shall give you relating to the elements needed to constitute a valid oral agreement, I instruct you that if Warner Bros.' theory that the agreement was not conditioned upon granting Syufy (appellants) day and date in San Francisco is accepted by the jury, then Warner Bros. has performed its part of the bargain and the case has been settled as to Warner Bros. On the other hand, if Syufy's version that the settlement was conditioned upon day and date in San Francisco is accepted by the jury, then there has been no settlement * * *.'
 
 
 10
 The court further instructed that the agreement need not be in writing, and further that the fact that plaintiffs did not receive the $2,000 in hand did not invalidate the agreement.
 
 
 11
 Appellants objected to the court's instructions on the ground that they permitted the jury to find as valid a contract which was barred by the statute of frauds.
 
 
 12
 We find no error in the court's reasoning or in its instructions. Before the statute of frauds issue could even be reached it was necessary to ascertain the terms of the contract. Once the terms of the contract were ascertained no issue as to the statute of frauds remained. If the contract was as appellants contended, suit has not been settled; if it was as appellee contended, then appellee had fully performed the agreement and the bar of the statute of frauds had, as a matter of law, been removed.[4] We find no merit in appellants' contention that the issue for the jury should have been couched in terms of the statute of frauds rather than performance. The result would have been precisely the same and the court's choice seems to us to have been more easily understandable by the jury.
 
 
 13
 Appellants also point out that before full performance can take the contract from the bar of the statute it must appear that performance was in reliance upon the oral contract and did not result from other considerations or motives. Here, appellants assert, the record exposed two aspects which reflected doubt upon such reliance. Under the circumstances, appellants contend, the jury should have been fully instructed upon the statute and should have been required to resolve the issue of reliance.
 
 
 14
 We cannot agree. We find no factual issue respecting reliance which should have gone to the jury. As casting doubt upon reliance appellants refer to the following:
 
 
 15
 1. They contend that appellee's distribution practices demonstrate that it had, by October 10, come to the conclusion that the agreed new methods were desirable practice; that it has already voluntarily put them into effect in San Jose and San Pablo and that it is thus apparent that it would have put them into effect as to the theatres here involved even though settlement of the suit did not result.
 
 
 16
 In our judgment these facts do not present a jury question, since, as matter of law, they are insufficient to raise the inference which renders lack of reliance a relevant consideration.
 
 
 17
 The defense of full performance recognizes that the fact that one party has performed acts for the other's benefit lends strength to his contention that he had agreed to do so and thus rationally corroborates his contention that an oral agreement existed. One does not usually perform acts for another's benefit unless he is obligated to do so. The counterdefense of lack of reliance strikes at the rational conclusion by showing the there were reasons for performance other than that an obligation to do so existed.
 
 
 18
 But here there is no question but that there was an agreement for the performance of the very acts in question. The only dispute is as to whether such performance was to include San Francisco as well as San Jose, Oakland and Sacramento.
 
 
 19
 Thus the facts appellants assert do not relate to the likelihood that appellee was, by agreement, obligated to make certain changes in its distribution practices. This is conceded. These facts relate only to the question whether, even in absence of such agreement, appellants might not have received the agreed benefits. It certainly is not the purpose of the doctrine of reliance to relieve one from the burdens of a contract simply because it is felt that he might, had he waited, have voluntarily received the benefits anyway.
 
 
 20
 2. Appellants contend that once appellee had knowledge that appellants were disputing appellee's construction of the oral agreement (which it knew on August 8, 1962), appellee had no right by further performance unilaterally to render enforceable an agreement which the statute of frauds on August 8 rendered null.
 
 
 21
 There might be merit in appellants' position if, by their repudiation, they had relieved appellee from all obligation to perform. They did no such thing. They demanded all that appellee was engaged in doing, plus more. Their notice thus reinforced appellee's position that it was, by agreement, obligated to do just what it was doing.
 
 
 22
 We conclude that the court did not err in refraining from discussing the statute of frauds in its charge to the jury.
 
 
 23
 As far as concerns the payment of $2,000 was agree with the District Court that tender had been made and that there was no need for appellee to continue pressing payment upon appellants under the circumstances.
 
 
 24
 Judgment for appellee upon the claims of appellants is affirmed.
 
 
 25
 The District Court also rendered judgment for appellee upon its counterclaim for costs and damages incurred by virtue of appellants' breach of their contract of settlement. Included was the expense of defending the suit at bar and included in this expense was a substantial item of attorney fees. The District Court recognized that attorney fees would not be a proper item of damages in such a case as this absent an agreement to this effect by the parties. The court found such an agreement to exist in an implied covenant not to sue.
 
 
 26
 It proceeded upon the theory that although appellants had refused to execute such a covenant, still the parties 'contemplated that the execution and delivery of a covenant not to sue was one of the duties of the plaintiffs under the agreement.' A covenant not to sue was, by implication, held to exist and to have been violated by initiation and prosecution of the suit at bar.
 
 
 27
 In our judgment this was error.
 
 
 28
 We assume arguendo that the contract of settlement impliedly included a covenant not to sue and that attorney fees necessarily incurred in defense of suit are a proper item of damages. However, the covenant, even if it be held to exist here, must be limited in its application to the merits of the antitrust suit brought by appellants. It cannot be held to apply to the separate issue of settlement of that suit which in this case amounts to an issue as to the very existence of the covenant itself. If there was no settlement there was no covenant.
 
 
 29
 When the very existence of a covenant is disputed in good faith that dispute must be resolved before the covenant can be recognized and allowance must be made for usch resolution. Ti cannot justly be contended that the disputant is not entitled to his day in court. It cannot rationally be argued that the covenant, retroactively, denied the right to the very litigation which was necessary to establish its existence.
 
 
 30
 Upon the counterclaim of appellee judgment is reversed and the matter remanded with instructions that expenses attendant upon the prosecution of the defense of settlement be eliminated from the award in favor of appellee.
 
 
 31
 Each party is to bear its own costs.
 
 
 
 [1]
 California Civil Code 1624 reads in pertinent part:
 'Statute of frauds
 The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent:
 
 
 [1]
 An agreement that by its terms is not to be performed within a year from the making thereof. * * *.'
 
 
 [2]
 Under California law as in most jurisdictions a bilateral contract falling within the statute of frauds may become enforceable if one party has fully performed. Roberts v. Wachter, 104 Cal.App.2d 271, 231 P.2d 534 (1951); Bergin v. Van der Steen, 107 Cal.App.2d 8, 236 P.2d 613 (1951)
 
 
 [3]
 The court reasoned as follows:
 'Assuming that the statute of frauds applies to this situation although it is true that there is California authority to the effect that partial performance of such an agreement does not take it out of the statute, it is also the law that full performance by the party whose performance requires more than a year will take the case out of the statute, if all that remains to be done is the performance of the other party and the contract has thereby become a unilateral contract. Dean v. Davis, 73 Cal.App.2d 166, 166 P.2d 15 (1946). If Warner Bros. Theory that the agreement was not conditioned upon granting Syufy day and date in San Francisco is accepted by the jury, then Warner Bros. has actually performed its part of the bargain and nothing remains to be done except for Syufy to dismiss the lawsuit as to Warner Bros. Under the rule of Dean v. Davis, supra, the statute of frauds would not apply. On the other hand, if Syufy's version that the settlement was conditioned upon day and date in San Francisco is accepted by the jury, then there has been no settlement. Without a contract, the statute of frauds does not apply. Since the only effect of the statute of frauds is to render an otherwise valid contract unenforceable. Therefore, under either version of the evidence, the statute of frauds would not apply to this case, and the respective motions of plaintiffs are denied.'
 
 
 [4]
 Dutton v. Interstate Inv. Corp., 19 Cal.2d 65, 119 P.2d 138 (1941), supports our approach to this problem. In Dutton the appellate court accepted the findings of the trier of fact as to the terms of the contract before determining that full performance by one party removed the bar of the statute of frauds