**DISTRICT–REALTY TITLE INSURANCE CORPORATION**

v.

**Rudolf ENSMANN, et al., Appellees,**

**James S. Sollins, et al., Appellants.**

**No. 84–5475.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 16, 1984.

Decided July 23, 1985.

Reuben B. Robertson, III, Washington, D.C., with whom Richard H. Streeter and Dennis A. Davison, Washington, D.C., were on the brief, for appellants.

Kate A. Martin, Washington, D.C., with whom David N. Webster, Washington, D.C., were on the brief, for appellees.

Before TAMM, MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This statutory interpleader action, like the related case of *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, (also released today), derives from Ferd Schneider's unsuccessful efforts to sell the Clermont apartment building, located at 2106 F Street, N.W., in Washington. Dumbarton Developers, Clermont Corporation, James S. Sollins, Dianna Brochendorff, and a number of project creditors appeal here from the district court's entry of summary judgment in favor of appellees Rudolf En-

smann and 2106 F Street Associates. The district court found that the agreement between the parties unambiguously required return of all the interpleaded funds to Ensmann. The court refused to allow the introduction of extrinsic evidence to contradict the terms of the written contract and found the prevention doctrine inapplicable. We affirm.

The facts underlying this dispute are summarized in some detail in our related opinion and consequently we need repeat only the bare essentials here.

By a contract dated February 10, 1981, Schneider agreed to sell the Clermont to a partnership composed of two District of Columbia corporations: Dumbarton Developers, Inc. ("Dumbarton") and Clermont Tenants Association, Inc. ("CTA") t/a Clermont Partnership (collectively, the purchaser). After acceding to several requests on the part of the purchaser to postpone settlement, Schneider declared that unless settlement was made by May 17, 1982, he would terminate the agreement. Settlement was not made, and Schneider sued in district court for a declaratory judgment that the agreement was terminated. That lawsuit was settled under an "Agreement of Settlement and Release" dated August 4, 1982. The settlement gave purchaser another two months to complete the transaction but asserted that time was of the essence and that the time for settlement could not be extended beyond October 4, 1982, for "any reason whatsoever."

Unbeknownst to Schneider, Dumbarton had brought in West German investor Rudolf Ensmann as a financial backer. Subsequently, Dumbarton, CTA, and Ensmann had become embroiled in disputes over the respective rights and duties of the parties and, in particular, over which entity should take title to the property at the closing. When the crucial date—October 4—arrived, these disputes had still not been resolved. On the morning of the 4th, however, Ensmann finally persuaded CTA to assign its interests to Ensmann and to attempt to exercise its option to buy out Dumbarton's share of the partnership. But when Dum-

barton learned of CTA's plan, Dumbarton objected and insisted that any purported exercise of the option would be invalid. The parties continued to wrangle with each other throughout the day and into the night. Several different sets of escrow instructions were delivered to the title company, District-Realty Title Insurance Corporation, none of which could be fully implemented. Ensmann's attorneys created appellee 2106 F Street Associates ("2106"), as a District of Columbia limited partnership 99% owned by Ensmann, with the intent that 2106 would ultimately take title to the property. They also transferred approximately $1,405,000 to the title company. Eventually, moreover, they obtained an assignment from Dumbarton. But, as of midnight, settlement had neither been made nor consummated. *See Schneider*, at 1010–1012, 1012–1015.

At about 2:50 P.M. on October 5, purchaser had still not made settlement. Schneider declared the Land Purchase Agreement terminated and requested that the title company return all documents submitted in connection with the transaction. In an apparent effort to salvage the situation, the would-be purchaser immediately arranged for the title company to issue Schneider a check for the adjusted purchase price and sent a new deed naming 2106 as grantee. Schneider was given a copy of the CTA assignment, but, for some reason, not the Dumbarton assignment. Schneider's attorney inquired as to whether a similar assignment could be obtained from Dumbarton and was told it could not. Ensmann's attorneys nonetheless encouraged Schneider to go through with the sale, offering to indemnify him in the event that he was sued for wrongful transfer. Schneider's attorney advised that such an indemnification would be inadequate to fully protect Schneider from resulting litigation. Consequently, on October 6, Schneider brought a second suit for declaratory judgment.

A few days later, Ensmann sought return of the money he had paid over to the title company. Aware of disputes among the parties and of the claims of various project creditors, the title company refused to comply with the request. Instead, on October 13, it filed an interpleader action pursuant to 28 U.S.C. § 1335, naming Ensmann, Dumbarton, Clermont Corporation (Dumbarton's successor in interest), James S. Sollins and Dianna Brochendorff (principals of Dumbarton and Clermont), CTA, Schneider, one of the tenants of the apartment building, and a number of Dumbarton creditors who had performed work related to the property. The title company deposited $245,000, representing an approximation of the aggregate value of the claims, with the court. (The balance was disbursed in accordance with Ensmann's directions.)

The district court denied a motion to consolidate the two suits, but granted 2106's motion to intervene. It then stayed the interpleader action pending disposition of *Schneider v. Dumbarton Developers*. Following rendition of judgment in *Schneider*, the district court granted summary judgment in favor of movants Ensmann and 2106. The judge ruled that there were no genuine issues of material fact and that movant was entitled to judgment as a matter law. He found that the pertinent contractual provisions were unambiguous and contemplated return of all funds to Ensmann in the event of nonsettlement. The judge refused to allow the introduction of extrinsic evidence to vary what he found to be clear contractual terms. He found no evidence that Ensmann had frustrated the contract, but concluded that in any event, the contract allocated the risk of intentional frustration to the Dumbarton Group (which includes Dumbarton, Clermont Corporation, Sollins and Brochendorff). He found the prevention doctrine inapplicable and concluded that no waiver had occurred. The district court awarded Ensmann the funds less counsel fees and expenses awarded to District-Realty and $50,000 liquidated damages awarded to Schneider. The Dumbarton Group and a number of project creditors appeal. District-Realty was discharged of all responsibility or liability for the interpleaded funds by order of the district

court. CTA has disclaimed any interest in the money. They and Schneider take no part in this appeal.

This appeal turns on the language of the Settlement Agreement between the Dumbarton Group and Ensmann. *See* Settlement Agreement, *reprinted in* Record Excerpts ("R.E.") at 38–46. There is no doubt that under the agreement, Ensmann assumed full responsibility for paying the project creditors and others if the deal went through. The dispute here is whether Ensmann assumed responsibility for the payments even if the deal failed. The district judge found that Ensmann did not. We agree.

Section 4(A) of the Settlement Agreement, R.E. at 41, spells out Ensmann's financial obligations, including the obligation to pay various project creditors. Section 4(B), however, provides that the

> [r]elease of funds provided for in ... (A) to any party *other than* the Ensmann group is subject to the following conditions.

R.E. at 41 (emphasis added). The conditions are the delivery into escrow of the escrow documents, full performance by Schneider of his obligations as seller, and the occurrence of settlement under the Land Purchase Agreement. Section 4(C) states that

> if settlement under the Purchase Agreement does not take place *for any reason,* all funds provided in subparagraph (B) above shall be paid by the Title Company to the order of the Ensmann group.

R.E. at 42 (emphasis added).

In addition, Section 9(C)(iii) mandates that

> if settlement under the Purchase Agreement does not take place ... the Title Company shall mark the Escrow Documents "VOID" and deliver each of the Escrow Documents to the party or Group which executed and delivered same.

If the documents were voided and returned,

> this Settlement Agreement shall be terminated, and *no party hereto shall have*

*any liability to the other parties* by virtue of this Settlement Agreement.

R.E. at 44 (emphasis added).

Appellants claim that the contractual language is ambiguous and that, in light of extrinsic evidence, it should be construed to mean "for any reason not attributable to Ensmann." In our view, phrases such as "for any reason" and "no party hereto shall have any liability" could hardly be more clear cut and categorical. This language is reasonably susceptible of only one interpretation: the funds must be restored to Ensmann. *Cf. Lee v. Flintkote,* 593 F.2d 1275, 1282 (D.C.Cir.1979). Given that Ensmann was putting up all the money and that the settlement agreement was reached at the eleventh hour, when the danger that the deal would founder must have been apparent, Ensmann had every reason to bargain for nonliability in the event that settlement failed to occur.

Although the Appellants strenuously insist upon the contract's ambiguity, they have failed to identify wherein the ambiguity lies. Instead they seek to direct the court's attention to extrinsic circumstances which they believe support their claim that the parties intended something different from the words they wrote. The district judge correctly observed that the parol evidence rule bars the introduction of extrinsic evidence to vary the terms of an unambiguous contract. *See Lee,* 593 F.2d at 1280 n. 25 & 1281; *Clayman v. Goodman Properties, Inc.,* 518 F.2d 1026, 1033–34 (D.C.Cir.1973); *Vakas v. Manuel,* 316 F.2d 369, 370 (D.C.Cir.1963). He also properly noted that the mere fact that parties disagree about the meaning of a contractual term does not establish ambiguity. *See Clayman,* 518 F.2d at 1034. Consequently, he refused to entertain Appellants' extrinsic evidence. There is no basis for disturbing the district judge's conclusions.

Even if there were ambiguity, the Appellants have failed to allege facts supporting their interpretation. The trial testimony of Ensmann's attorney so heavily relied upon by the Appellants as an "admission" is at best equivocal. Ms. Owen stat-

ed that Ensmann's main concern was avoiding liability for events outside his control, *see* R.E. at 160a–160b; such an assertion is insufficient to prove that he was eager to embrace liability for nonsettlement resulting from events within his whole or *partial* control. The testimony also fails to establish that the contract as finally written and signed was intended by both parties to relieve Ensmann of liability only if he were entirely free of fault for the nonsettlement. Apart from Ms. Owen's equivocal testimony, the Appellants have essentially no support for their interpretation except the singularly unpersuasive protest that the contract could not mean what it appears to mean because if it did they would never have signed it.

Supporting the interpretation adopted by the court, on the other hand, is not only the natural meaning of the words as written, but also the fact that an early draft contained the very provision which the Appellants now seek to read into the finished contract. *See* Draft Settlement Agreement 8(B)(i), *reprinted in* Supplemental R.E. at 11. The excision of a clause appearing in an early draft is strong circumstantial evidence that the parties made an affirmative decision to exclude it from their integrated agreement.

█ Finally even if we were to accept both the Appellants' assertion of ambiguity and their flimsily supported interpretation, we would still be constrained to conclude that the contract required return of the funds to Ensmann. The Appellants have failed to allege facts that would allow a court to reasonably conclude that Ensmann intentionally frustrated the deal, and the district court's fact findings in the related case indicate that the blame should be spread a great deal more widely than Appellants suggest. There is no evidence that Ensmann intentionally sabotaged the deal. The evidence is to the contrary. It suggests that he devoted considerable energy to attempting to close, that even after the time for closing had elapsed, he continued to press Schneider to go through with the deal, that he offered to indemnify

Schneider, and that subsequently he participated actively in litigation to force Schneider to go through with the sale. The one act to which Appellants point as arguably supporting their interpretation—the failure to give Schneider a copy of the Settlement Agreement—occurred after October 4. As explained in some detail in *Schneider,* settlement had to occur by October 4. Acts tending to show that Ensmann frustrated settlement *after* that date are unavailing.

█ The Appellants also urge us to apply the prevention doctrine. We agree with the district judge that the doctrine has no applicability to these facts. The prevention doctrine is an exception to the general rule that one has no duty to perform under a contract containing a condition precedent until the condition occurs. The doctrine excuses a condition precedent when a party wrongfully prevents the condition from occurring. The theory is that

> [a]n express promise to perform on the happening of an event warrants implication of a promise to refrain from activity impeding its happening, and breach of the implied promise is legally as serious as the breach of the express.

*R.A. Weaver & Associates, Inc. v. Haas & Haynie Corp.,* 663 F.2d 168, 176 (D.C.Cir. 1980). The prevention doctrine is triggered when a promissor "completely forecloses occurrence of the condition" or "*substantially* hinders its occurrence." *Id.* (emphasis added).

The gist of Appellants' argument is that Ensmann intentionally prevented settlement from occurring under the Land Purchase Agreement and consequently should not be permitted to rely on the nonoccurrence of settlement to avoid liability.

█ What Appellants neglect to note, however, is that when a contract "authorizes" a party to prevent a condition from occurring, "there is no prevention." *Shear v. National Rifle Association,* 606 F.2d 1251, 1256 (D.C.Cir.1979); *see also* 5 *Williston on Contracts* § 377A, at 235; 3A *Corbin on Contracts* § 767, at 545. The

essential inquiry is whether or not the contract allocated the risk of nonsettlement. By stating that the funds were to be returned to Ensmann if settlement did not occur "for any reason," the contract allocates to Dumbarton the risk of nonsettlement, regardless of cause. Consequently, there is no prevention.

 Appellants further contend that Ensmann, by his conduct, waived the requirement that settlement occur under the Land Purchase Agreement. Although it is certainly true that "[w]aiver can occur by mutual agreement when the parties manifest an intent to be bound by a contract even when a stated condition precedent has not been satisfied," *Molton, Allen & Williams, Inc. v. Harris*, 613 F.2d 1176, 1179 (D.C.Cir.1980), no such mutual agreement is present here. Appellants concede that Ensmann never waived the condition in writing or even by express oral agreement. The acts to which Appellants point give no indication of waiver. Rather they show Ensmann's continuing efforts to bring about the settlement. They are consistent with other portions of the assignment agreement which require the parties to use their best efforts to bring about settlement and, if necessary, to join in suing Schneider for specific performance. Efforts to bring about a condition cannot be considered waiver of the condition.

Finally Appellants contend that the district court's entry of judgment was premature because issues of fact remain which should have been resolved at trial. None of the lingering factual disputes, however, is *material* to the resolution of this controversy. Questions such as "whether Ensmann's actions of October 5–7 substantially contributed to the ultimate demise of the deal" relate to conduct after the relevant date and to extrinsic matters, the consideration of which is barred by the parol evidence rule.

This case turns on the interpretation of an agreement between the Dumbarton Group and Ensmann. We conclude that the district court properly found the relevant contractual terms unambiguous and properly applied the parol evidence rule to bar the introduction of extrinsic evidence to vary the terms of the contract. We further conclude that the district judge was correct in rejecting Appellants' prevention and waiver arguments and in finding no genuine issues of material fact requiring a trial for resolution. Accordingly, we affirm.

*It is so ordered.*