Ferd SCHNEIDER

v.

DUMBARTON DEVELOPERS, INC., a D.C. Corporation, d/b/a Clermont Partnership, et al.,

Clermont Tenants Association, Inc., a D.C. Non-Profit Corp., d/b/a Clermont Partnership, Appellant.

Ferd SCHNEIDER

v.

DUMBARTON DEVELOPERS, INC., a D.C. Corporation, d/b/a Clermont Partnership, et al.,

2106 F Street Associates, Appellant.

Ferd SCHNEIDER

v.

DUMBARTON DEVELOPERS, INC., a D.C. Corporation, d/b/a Clermont Partnership and Clermont Corporation, a D.C. Corporation, Appellants,

Clermont Tenants Association, Inc., a D.C. Non-Profit Corp., d/b/a Clermont Partnership, et al.

Ferd SCHNEIDER, Appellant,

v.

DUMBARTON DEVELOPERS, INC., a D.C. Corporation, d/b/a Clermont Partnership, et al.

Nos. 83-2075 to 83-2078.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1984.

Decided July 23, 1985.

Kate Abbott Martin, Washington, D.C., with whom David N. Webster and William R. Robertson, Washington, D.C., were on the brief for 2106 F Street Associates and Clermont Tenants Ass'n appellants in No. 83–2075 and 83–2076 and cross-appellees in No. 83–2077.

Reuben B. Robertson, III, Washington, D.C., for Dumbarton Developers, Inc., et al., appellant in No. 83–2077 and cross-appellees in Nos. 83–2075, 83–2076 and 83–2078.

Howard H. Stahl, Washington D.C., for Ferd T. Schneider appellee in No. 83–2078 and cross-appellant in Nos. 83–2075, 83–2076 and 83–2077. Loren Kieve, Washington, D.C., also entered an appearance for Schneider.

Before MIKVA, GINSBURG and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This appeal and cross appeal (as well as the related case *District-Realty Title Insurance Corp. v. Ensmann,* 767 F.2d 1018, also released today) arise from appellee Ferd Schneider's abortive attempt to sell the appellants the Clermont apartment building, located at 2106 F Street, N.W., in Washington. This court has jurisdiction on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332 (1982).

The legal questions raised are straightforward, but the facts are convoluted. The district court's findings consume almost twenty pages of small type. We repeat only the more salient findings here.

On February 10, 1981, Schneider agreed to sell his building to appellants, Clermont Tenants Association, Inc., ("CTA"), a District of Columbia nonprofit corporation and Dumbarton Developers, Inc. ("Dumbarton"), a District of Columbia corporation, co-partners t/a Clermont Partnership, (collectively, the purchaser) (*see* Land Purchase Agreement, *reprinted in* Record Excerpts ("R.E.") at 319–36). Dumbarton apparently had been recruited by CTA as a developer partner; its role was to obtain the funds necessary to buy the property and make certain payments of cash and notes to CTA members. Under the terms of the Land Purchase Agreement, settlement was to have been completed 120 days following execution of the agreement. At the purchaser's request, however, settlement was postponed twice. Finally, Schneider announced that unless "full settlement [was] made on or before 3:00 P.M., May 17, 1982," he would consider the Land Purchase Agreement terminated. On May 17, Schneider did all that the Agreement required of him, but the purchaser failed to make settlement. Schneider then brought suit seeking a declaratory judgment that the agreement was terminated. This suit was settled under an "Agreement of Settlement and Release," dated August 4, 1982 ("August 4 Settlement Agreement", *reprinted in* R.E. at 108–13).

Under the August 4 Settlement Agreement, purchaser agreed to "consummate settlement of the Agreement on or before October 4, 1982, time being of the essence." Apart from seven exceptions not pertinent to this appeal, the time for settlement could not be further extended for "any reason whatsoever." The agreement further provided:

[I]n the event it fails to consummate settlement as aforesaid, the deposit in the amount of Fifty Thousand Dollars ... shall be forfeited to Schneider as liquidated damages, the Agreement will thereupon be terminated and of no further force or effect, and the parties relieved of all further liability or obligation thereunder. Clermont, Dumbarton, and Corporation agree that in the event settlement is not consummated in accordance with the terms of Paragraph 1, they shall thereupon have waived and relinquished any and all interest in or rights to purchase the property.

Thus, the purchaser was given two months—from August 4, 1982, until October 4—to consummate settlement. Schneider was ready, willing, and able to make settlement at all times during that period, but the purchasers designated the very last day, October 4, 1982, as the earliest date at which they would be ready to make settlement.

Unbeknownst to Schneider, Dumbarton had entered into a financing arrangement with West German investor Rudolf Ensmann for the purchase and development of the property. Since early September 1982, moreover, Ensmann's attorneys had been attempting—without success—to persuade Dumbarton to let Ensmann take title to the property at the closing. Having failed to persuade Dumbarton, Ensmann's attorneys had begun pressing CTA to exercise its contractual option to buy out Dumbarton's share of the partnership. As of daybreak on October 4, however, no agreement had been reached.

The events of October 4, 1982, and the days immediately following are a tangled web of mix-ups, mistakes, and miscalculations.

On the morning of October 4, Ensmann's attorneys finally concluded an "Agreement for Assignment and Disbursement" with CTA under which CTA was to assign all of the Clermont Partnership's right, title, and interest in the apartment building to Ensmann and do everything in its power to ensure that Ensmann perfected title to the property. Schneider was not told of this agreement. At about noon, 2106 F Street Associates ("2106") was created as a limited partnership 99% owned by Ensmann. Schneider was not told about this development either.

Schneider and his attorney arrived at the title company at about 2:00 P.M. and had completed their part of the transaction by about 2:20 P.M. At that time, one of Dumbarton's attorneys informed Schneider that it "might be necessary" to change the name of the grantee on the deed. Schneider's lawyer replied that his client had no objection provided he "gets his money." The possible new grantee was not named, and Schneider was still not informed of the agreement which had been concluded that morning.

Schneider asked the settlement officer for his payment, but was told it was not yet available. Schneider asked "when will I get my money" and was told to call the title company on Wednesday, October 6. Having fulfilled all his obligations under the Land Purchase Agreement and the August 4 Settlement Agreement, Schneider left the title company's offices at about 2:30 P.M. At about 4:00 P.M., Schneider's attorney phoned the title company and was informed that the purchaser had not completed settlement. He was still not informed, however, of the assignment or of the creation of 2106.

Between 4:00 and 5:00 P.M., CTA delivered to Dumbarton a document that purported to exercise CTA's option to buy out Dumbarton's interest in the Clermont Partnership. Dumbarton immediately informed CTA that Dumbarton was not in default as to any of its obligations, considered the purported exercise of the option invalid, and would contest it.

At about 6:00 P.M., lawyers for CTA and for 2106 delivered escrow instructions and three checks totalling $1,405,000 to the title company. Dumbarton had never authorized or joined in the escrow instructions. The instructions were defective in a number of other respects as well.

Schneider's attorney called the title company's offices at about 6:30 P.M. and was again told nothing except that settlement had not been completed.

At about 8:30 P.M., new escrow instructions were delivered to the title company, this time by CTA, 2106 and Dumbarton. The title company was unable to comply with the mandate of the instructions because they contained several preconditions which could not be satisfied. Specifically, the instructions required certain payments to Dumbarton, CTA, and others, for which the sums then deposited with the title company were insufficient. The instructions

also required delivery to the title company of certain documents—CTA's assignment of its interests to 2106 and Ensmann's release of a lawsuit against Dumbarton—which either had not been delivered or had not been fully executed.

At about 10:00 A.M. on October 5, 1982, Schneider's lawyer called the title company and learned that settlement had still not been made. At 11:00 A.M., representatives of Dumbarton, CTA, and 2106 (Ensmann) arrived at the title company, delivered more money, and began drawing up still more instructions. At 2:00 P.M., Schneider's attorney called again. After learning that settlement was still not complete because the title company could not comply with the latest escrow instructions, Schneider decided to terminate the Land Purchase Agreement. Schneider and his lawyer appeared at the title company at about 2:50 P.M. and, upon being informed by the settlement officer that no substantial progress has been made, tendered a letter terminating the agreement and claiming the $50,000 deposit as liquidated damages. Schneider's attorney instructed the title company to return all documents submitted in connection with the settlement.

*After* Ensmann's attorneys learned that Schneider had terminated the agreement, they drafted yet another set of escrow instructions and directed that the title company issue a check for the adjusted purchase price to Schneider.

On the morning of October 6, Schneider's attorney received from the title company, not the documents whose return he had requested, but instead the check, a copy of a new deed naming 2106 as grantee, and a new District of Columbia Real Estate Deed Recordation Tax and Real Property Tax Return. This was the first that Schneider's attorney had heard of 2106. The title company had forwarded a copy of CTA's assignment of its rights to 2106; it had forwarded nothing indicating a similar assignment by Dumbarton. Schneider's attorney was aware of disputes among Dumbarton, CTA, and their financial backer

and, consequently, was leary of assuming Dumbarton's acquiescence. He asked a lawyer who was acting for both Ensmann and 2106 whether she could obtain Dumbarton's consent to the exercise of the option and was told that that would be "impossible." Ensmann's attorneys offered to indemnify Schneider for any resultant litigation.

Schneider's attorney advised that the proffered indemnification was inadequate to protect Schneider from lawsuits claiming he had wrongfully transferred property. Thus, on October 7, 1982, Schneider returned the check and filed suit in district court, seeking a declaratory judgment that the Land Purchase Agreement was terminated, $50,000 in liquidated damages, and attorney fees. Dumbarton and CTA counterclaimed for specific performance. The district court found for Schneider, declaring the agreement terminated and holding all the defendants jointly and severally liable in the amount of $50,000, but ordered the parties to bear their own costs and fees. Defendants appealed; Schneider cross-appealed for attorney fees. We affirm all aspects of the district court's judgment except the conclusion that 2106 is jointly and severally liable with the other defendants for the $50,000 liquidated damages.

*Substantial Performance:*

The appellants contend that their actions on October 4 and the two days immediately following constituted substantial performance under the contracts. Although the district court may have overstated the holding of *Drazin v. American Oil Company,* 395 A.2d 32 (D.C.App.1978), in asserting that the doctrine of substantial performance can never apply where time is of the essence, the district judge reached the correct result.

In *Drazin,* the District of Columbia Court of Appeals considered whether a unilateral act by one party could add a "time is of the essence" provision to a real estate contract that initially had not had one. The court concluded it could and denied appellant Drazin's claim for specific perform-

ance, noting that he had failed to meet the deadline that the defendant had imposed.

The court did not address the question of whether Drazin's performance had been substantial or whether the substantial performance doctrine in general could apply where time is of the essence. We too need not decide whether the substantial performance doctrine has any proper application to time is of the essence contracts because it is evident that the appellants did not substantially perform. The appellants' acts on October 4 were not sufficient to constitute substantial performance and their acts after that date may not properly be considered.

Under District of Columbia law, "time is of the essence" provisions are taken seriously and occasion a departure from the ordinary rules governing time limitations in land contracts. Generally, the time set in a real estate contract is looked upon as "an approximation of what the parties regard as a reasonable time." *Drazin*, 395 A.2d at 34; *Doering v. Fields*, 187 Md. 484, 490, 50 A.2d 553, 555–56 (1947). Normally, neither party is held strictly to the time limit although the limit is "not nugatory" and the seller has "a right to expect that the vendees [will] be ready at *about* that time." *Drazin*, 395 A.2d at 34. Such laxity ceases, however, where time is of the essence. In contracts for sale of land

> equity treats the [time] provision as formal rather than essential, and permits the purchaser who has suffered the period to elapse to make payment after the prescribed date, and to compel performance by the vendor notwithstanding the delay, *unless it appears that time is of the essence of the contract* by express stipulation, or by inference from the conduct of the parties, the special purpose for which the sale was made, or other circumstances surrounding the sale.

*Id.*; *Kasten Construction Co. v. Maple Ridge Construction Co.*, 245 Md. 373, 379, 226 A.2d 341, 345 (1967) (both quoting *Soehnlein v. Pumphrey*, 183 Md. 334, 338, 37 A.2d 843, 845 (1944)).

■ Given that the August 4 Settlement Agreement stated not only that "time is of the essence" but also that "the time for settlement may not be further extended for any reason whatsoever," acts performed after the October 4 deadline may not be considered in determining whether there was substantial performance. The appellants actions before the October 4 deadline, however, do not constitute substantial performance.

■ As commentators have noted, *see, e.g., Corbin on Contracts* § 704, substantial performance is not susceptible of simple definition. It is generally conceded to exist, however, when a contracting party has failed to render full performance but the defects are, all considered, minor. Although it most often applies to construction contracts (and some cases have even limited it to that context, *see, e.g., Corbett v. Freedman & Sons*, 161 N.E. 415, 263 Mass. 391 (1928)), the general view is that the doctrine may apply to any contract, *see Corbin on Contracts* § 701. Whether a particular tender of performance is 'substantial' depends on the facts of the case.

> Where the line is to be drawn between the important and the trivial cannot be settled by a formula. In the nature of the case, precise boundaries are impossible. The same omission may take on one aspect or another according to its setting ... Nowhere will change be tolerated, however, if it is so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract.... The question is one of degree, to be answered ... if the inferences are certain, by the judges of the law. We must weigh the purpose to be served, the desire to be gratified, the excuse for deviation from the letter, the cruelty of enforced adherence.

*Jacob & Youngs v. Kent*, 129 N.E. 889; 230 N.Y. 239 (1921) (Cardozo, J.). Important factors are the character of the performance promised, the purposes and interests it was expected to serve, and the extent to which nonperformance has defeated those purposes and ends. Another key

consideration is the actual receipt and enjoyment of benefits by the defendant. In short, substantial performance does not contemplate full performance but does contemplate performance of all important parts of the contract. *See Corbin on Contracts* § 712.

■ Turning to the facts at hand, we find that the performance tendered by the appellants cannot be considered substantial. The central purpose of the contract was to effect a transfer of real estate. To realize this purpose, the appellants had to pay the full purchase price to the title company (which would then issue a check to Schneider) and agree to a transfer to the entities named in the original agreement or their lawful substitutes. Neither of these acts was performed on October 4.

That the appellants paid 'substantial' sums of money over to the title company was of no benefit to Schneider because the appellants' escrow instructions prevented the title company from releasing the funds. We reject appellants' contention that the unfulfilled preconditions in the escrow instructions were merely minor details, devoid of real significance. Since the title company would not release any funds to Schneider until the full amount was deposited, these 'minor details' prevented Schneider from receiving any payment whatsoever on the date due, let alone the full payment to which he was entitled under the contract.

Equally important, the appellants failed to make proper provisions for the transfer of title. Schneider was contractually bound to deliver the property to the Clermont Partnership, but the partnership's financial backer, Ensmann, was insisting upon transfer to a new entity called 2106. This controversy was not resolved on October 4, nor, so far as the record discloses, at any point thereafter.

■ Ensmann was able eventually to present a legally effective assignment from CTA to 2106 but admitted that it would be "impossible" to obtain a similar document from Dumbarton. The best Ensmann could do was make a lame offer to indemnify Schneider if Dumbarton sued for wrongful transfer. Indemnity is not performance and cannot be cavalierly substituted for performance. Nor is the distinction a mere technicality. Ensmann in essence had conditioned payment on the issuance of a new deed not in accordance with the Land Purchase Agreement. Such "performance" is not "substantial"; indeed under District of Columbia law, it is of no effect whatsoever. *Ferguson v. Caspar*, 359 A.2d 17, 24 (D.C. 1976), holds that "a tender of performance by the purchaser which contains conditions other than those specified in the contract between the parties is ineffectual."

In sum, the August 4 Settlement Agreement made timely compliance a key term of the contract by stating both that "time is of the essence" and that the time for compliance could not be extended for "any reason whatsoever." When we further recall the history of the case—the original provision for settlement within 120 days of the execution of the Land Purchase Agreement, the two postponements at the appellants' request, Schneider's ultimatum that payment be made by May 17, 1982 or the contract would terminate and appellants' failure to meet the deadline, Schneider's original suit for declaratory judgment and the August 4 Settlement Agreement providing the appellants with one last chance to buy the property—we have no difficulty discerning that stricter adherence to the deadline was intended than is generally the case in real estate transactions. The parties bargained for the strict construction that Schneider urges and it would be improper for the courts to put any other interpretation on the "time is of the essence" clause.

It would therefore be improper to include acts performed after October 4 in considering substantial performance. Turning to the events of October 4, we find that the appellants failed to pay the seller any money and failed also to resolve a dispute as to which entity would take title. Both of these failures go to the heart of the contract. They are material; indeed it is difficult to imagine anything more material.

Reviewing all the circumstances of the present case, we conclude that the district judge was correct in ruling that the appellants had not substantially performed their obligations under the contract within the time allotted.

*Notice and Opportunity to Cure:*

The appellants argue that under the terms of the Land Purchase Agreement, they were entitled to notice of default and a five-day opportunity to cure the default, which entitlements were improperly denied by Schneider's filing suit only three days after the scheduled settlement date. The appellants suggest that the contract's notice and cure provision applied to any and all defaults, even the most grievous. We need not determine whether this interpretation—which in effect provides an automatic extension whenever settlement is not made—is correct. We agree with the district judge that the August 4 Settlement Agreement effectively eliminated the grace period provision from the agreement between the parties.

The August 4 Settlement Agreement, reached in compromise of a lawsuit that had been filed solely because of excessive delays in making settlement under the contract to purchase, essentially provided for one last chance to complete the deal. The agreement not only asserted that "time is of the essence" but also emphatically stated that "the time for settlement may not be further extended for any reason whatsoever."

■ Settlement agreements are in high judicial favor. *See, e.g., Williams v. First National Bank,* 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *Autera v. Robinson,* 419 F.2d 1197, 1199 (D.C.Cir. 1969). They enable the parties to avoid the expense and delay involved in full litigation of the issues and spare the court the burden of trial. The District of Columbia partakes of the general view that such an agreement voluntarily entered into cannot be repudiated by either party and will be enforced summarily by the court. *See, e.g., Autera v. Robinson,* 419 F.2d at 1200; *see also Kelly v. Greer,* 365 F.2d 669, 671 (3rd

Cir.1966), *cert. denied,* 385 U.S. 1035, 87 S.Ct. 772, 17 L.Ed.2d 682 (1967); *Cummins Diesel Michigan, Inc. v. The Falcon,* 305 F.2d 721, 723 (7th Cir.1962).

■ A settlement agreement resolving a contract dispute is said to operate as a substituted contract, cancelling or modifying the prior contract to the extent that the two are inconsistent. *See Sirota v. Econo-Car, International, Inc.,* 556 F.2d 676, 681 (2d Cir.1977); *Jersey Central Power and Light Co. v. Local 327, IBEW,* 508 F.2d 687, 703 & n. 44 (3rd Cir.1975); *Restatement of Contracts* § 408 (1932 & Supp. 1979); 6 *Corbin on Contracts* § 1293 (1962). Whether the provisions of a subsequent contract are deemed to supersede the provisions of a prior contract turns on the parties' intent which is ascertained from the contracts themselves when they are unambiguous. *See Jersey Central Power & Light Co.,* 508 F.2d at 703.

■ We find that the August 4 Settlement Agreement clearly meant for October 4, to be the last and final opportunity to settle and that an automatic five-day extension is inconsistent with the intent of the Settlement Agreement. We conclude that the settlement contract eliminated the grace period provision and that, consequently, the appellants' claim of entitlement is without merit.

*Waiver:*

The appellants assert that even if Schneider had a right to demand payment on October 4, his actions on that day constituted a waiver. The appellants point to Schneider's failure to terminate the agreement when first informed that the title company would not pay out his money before October 6 and Schneider's apparent willingness to provide a new deed if necessary. We reject appellants' waiver argument.

■ Under District of Columbia law, which we are bound to apply in this diversity case, a written contract specifying that time is of the essence can only be modified in writing. *See Landow v. Georgetown-In-*

*land West Corp.*, 454 A.2d 310, 313 (D.C. 1982). In *Landow*, the District of Columbia Court of Appeals rejected arguments remarkably similar to those advanced by the appellants here. The buyer had contended that as long as he was making good faith efforts to consummate the transaction, the settlement date should be extended notwithstanding a "time is of the essence" clause. The court rejected the buyer's argument as "without legal foundation" and "commercially impracticable." *Id.*

■■■ The court noted that in a written contract where time is *not* of the essence, strict compliance with the date of performance may be waived orally. Where time is stated to be of the essence, however, a different rule applies. Modification of the date of settlement is then regarded as a material change which cannot be effected without a writing. Since no one here contends that Schneider's right to demand adherence to the October 4 deadline was ever waived in writing, whether Schneider's actions suggested a willingness to dispense with the deadline is and should be irrelevant.

A different rule would be inconsistent with public policy. Were we to adjudge acts as equivocal as Schneider's sufficient to constitute a binding waiver of material contractual rights, we would discourage the negotiations and minor, reasonable accommodations which are the norm in the business world. The consequence would be a decrease in flexibility and an increase in litigation. Such a rule would be as unwise as it would be unprecedented in District law. Consequently, we affirm the trial court's conclusion with respect to waiver.

*Attorney Fees:*

■■■ Schneider has cross-appealed from the district court's denial of attorney fees. We affirm the district court. The cases Schneider cites fail to establish his entitlement to fees. Under the American rule, parties normally bear their own costs and fees. A fee award is an extraordinary remedy which the court grants only where specially authorized by contract or statute

or where the conduct of the losing party was exceptionally bad. *See, e.g., Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 249–70, 95 S.Ct. 1612, 1617–28, 44 L.Ed.2d 141 (1975); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717–19, 87 S.Ct. 1404, 1406–07, 18 L.Ed.2d 475 (1967); *Trilon Plaza Co. v. Allstate Leasing Corp.*, 399 A.2d 34, 37 (D.C.1979).

Schneider, rather than the appellants, initiated this lawsuit in the district court, and although the legal position of the appellants was weak and they have pursued their cause here without success, we are not convinced that they have acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Cf. Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Association, Inc.*, 385 A.2d 20, 24 (D.C.App.1978); *1901 Wyoming Avenue Cooperative Association v. Lee*, 345 A.2d 456, 465 (D.C.App.1975); *F.W. Berens Sales Co. v. McKinney*, 310 A.2d 601, 603 (D.C.App.1973).

■■■ Nor do we accept Schneider's claim that he is entitled to fees on a breach of contract theory. He asserts that the August 4 Settlement Agreement was a contract and that a major goal of the agreement was to avoid litigation; by forcing him to sue for declaratory judgment and then pursuing this appeal, appellants, he contends, deprived him of the benefit of his bargain. A settlement agreement is, of course, a contract, *see Bullard v. Curry-Cloonan*, 367 A.2d 127, 131 (D.C.App. 1976), and litigation in defiance of a promise not to sue could constitute a breach. But no such situation presents itself here. The August 4 Settlement Agreement contains no explicit covenant not to sue. Even if we were to find such a covenant by implication, as the law permits us to do, the covenant would go only to the merits of the controversy settled—not to the existence or terms of the Settlement Agreement itself. *See Winchester Drive-In Theatre, Inc. v. Warner Bros. Pictures Distributing Corp.*, 358 F.2d 432, 436 (9th Cir.1966). Since we find that this suit arose from

genuine disputes as to the terms and import of the settlement agreement, we reject Schneider's breach of contract theory.

■ Where the trial court exercises its discretion to award or deny attorney fees, our role on review is restricted to determining whether discretion was abused. *See Trilon Plaza Co.*, 399 A.2d at 38; *Panos v. Nefflen*, 205 A.2d 600, 602 (D.C.App.1964) (quoting *Shima v. Brown*, 140 F.2d 337, 337 (D.C.Cir.1943)). Here we have little difficulty in concluding that the trial court exercised its discretion soundly. Indeed, as indicated above, we are unaware of any precedent which would authorize the award of fees in the circumstances of this case.

*Liability of 2106 F Street Associates:*

Appellant 2106 objects on both procedural and substantive grounds to its being held jointly and severally liable for the $50,000 liquidated damages. 2106 contends that because it appeared as an intervenor and Schneider never amended his complaint to include specific claims against the intervenor, 2106 had neither adequate notice of nor reasonable opportunity to defend against the liquidated damages liability. 2106 further contends that it assumed no liability for damages under the agreements between it and Dumbarton and CTA. We find the first contention without merit, but agree with the second.

■ When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party. *See District of Columbia v. Merit Systems Protection Board*, 762 F.2d 129, 132 (D.C.Cir.1985); *Marcaida v. Rascoe*, 569 F.2d 828, 831 (5th Cir.1978). The intervenor renders itself "vulnerable to complete adjudication by the federal court of the issues in litigation between the intervenor and the adverse party." *United States v. Oregon*, 657 F.2d 1009, 1014 (8th Cir.1981) (quoting 3B *Moore's Federal Practice* ¶ 24.16[6] (2d ed. 1981)). It is said to assume the risk that its position will not prevail and that an order adverse to its interests will be entered. *See* 7A C. Wright & A. Miller, *Federal Practice &*

*Procedure* § 1920, at 611 (1972). As we said recently, "the possibility that the plaintiff will be able to obtain relief against the intervenor-defendant" is part of the "price" paid for intervention. *District of Columbia*, at 132.

■ As an intervenor, 2106 subjected itself to the plaintiff's claims against the defendant, notwithstanding plaintiff's failure to amend his complaint to include reference to 2106. 2106 entered the lawsuit with full awareness of the nature of Schneider's claims against the defendants and participated actively. It argued vehemently that it was the lawful substitute for the original parties and had the right to take title to the property under the contracts negotiated by the original parties. It was aware, moreover, that Schneider's trial brief asked for "judgment against the defendants CTA, Dumbarton, *and 2106 FSA, and each of them*, in the amount of $50,000" (emphasis added). Although 2106 may not have anticipated that the court would hold it liable, unpleasant surprise is not the same as unfair surprise and certainly does not constitute a due process violation in circumstances such as these. The district court therefore reasonably rejected 2106's claim of inadequate notice and opportunity to defend. *See* Order, Civ. Action No. 82–2876 (D.C.D.C. Sept. 27, 1983); *cf.* Memorandum of Points and Authorities in Support of 2106 F Street Associates' Motion for Reconsideration, *Schneider v. Dumbarton Developers, Inc.*, Civ. Action No. 82–2876.

■ The district court erred, however, when it concluded that 2106 was jointly and severally liable for the liquidated damages. Given that appellants failed to make settlement and that Schneider lawfully terminated the contract, 2106 was under no further obligation. It was not the defendants' assignee unless settlement was made and even if it had been, under District of Columbia law, the terms of the assignments were insufficient to impute an assumption of liability to 2106.

The agreement between 2106 and CTA, *see* R.E. at 122–26, and the agreement be-

tween 2106 and Dumbarton, *see id.* at 141–51, were drafted at the eleventh hour when the danger that the deal would fall through must have been apparent. They are structured so as to terminate if settlement is not consummated. The agreement with CTA stated:

> Provided that Ensmann is able to acquire the Property at the closing, Ensmann will indemnify and hold CTA harmless from and against any and all loss, cost, damage, expenses or attorneys fees arising from any claims by any person, firm, [or] corporation.... If [however] Ensmann is not able to acquire title to the Property pursuant to the Dumbarton Agreement at Closing *for any reason,* this Agreement shall be void and of no further force and effect, the Title Company shall return the funds provided ... to Ensmann and neither party hereto shall have any obligation or liability to the other under this Agreement.

*See id.* at 124–25 (emphasis added). The agreement with Dumbarton contained a similar provision. *See id.* at 147. Since the district court properly found that settlement was neither made nor consummated, the assignments terminated and CTA and Dumbarton (or their successors) must bear the burden of the liquidated damages.

 Even if assignments had not terminated, we would still conclude that 2106 was not liable. Under District of Columbia law an assignee is responsible only for those obligations of the assignor that he contracts to undertake. He is only liable for past breaches if he has "expressly assume[d] any duties correlative with the right assigned, there being no implication of assumption by the mere assignment." *Rittenberg v. Donohoe Construction Co.,* 426 A.2d 338, 341 (D.C.1981). Since the district court properly found that 2106 was not an assignee on October 4, it became one only after October 4, if at all; 2106 never assumed liability for the damages in question.

 Schneider has contended that 2106 is attempting to "have it both ways" and should be equitably estopped from refusing to accept liability. We disagree. There

can be no question that the arrangement 2106 negotiated was highly advantageous to it, but driving a hard bargain is not grounds for estoppel. We do not consider 2106's position internally inconsistent. 2106 has argued that the purchasers are entitled to specific performance of the Land Purchase Agreement and that 2106 should take title as the assignee. If, as the district court properly determined, however, Schneider was within his rights in terminating the agreement, 2106 contends that its relationship with Dumbarton and CTA is severed and 2106 has no further obligations to either in connection with this matter. In other words, the assignment was good only for the purposes of a successful transfer of the apartment building, and, failing that, is of no further purpose or effect.

*Conclusion:*

Because we find that the assignments, in effect, allocated the risk of nonsettlement to Dumbarton and CTA (or their successors), we conclude that the trial court erred in holding 2106 jointly and severally liable for the liquidated damages. We reverse the trial court's ruling on that issue. In all other respects, we affirm.

*It is so ordered.*