854 F.2d 528
 272 U.S.App.D.C. 119
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
James I. WATTS, Appellant,
v.
Norman A. CARLSON, Director, Federal Bureau of Prisons.
 No. 87-5045.
 United States Court of Appeals, District of Columbia Circuit.
 Aug. 3, 1988.
 
 BEFORE: WALD, Chief Judge and MIKVA and HARRY T. EDWARDS, Circuit Judges.
 
 JUDGMENT
 
 1
 This case was considered on the record and on the briefs filed by the parties. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED by the court, for the reasons stated in the accompanying memorandum, that the order of the district court filed January 6, 1987 denying appellant's application for an order to show cause be affirmed.
 
 
 3
 The Clerk is directed to withhold the issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 Appellant James Watts has appealed the decision of the district court denying his petition to enforce a settlement agreement.[1] Because the district court correctly concluded that appellee Bureau of Prisons ("BOP") has complied with the terms of the agreement, we affirm.
 
 I.
 
 5
 In 1979, Watts filed suit in the district court claiming that the BOP had discriminated against him on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e (1982). The gravamen of the complaint was that Watts, a computer specialist, had been unfairly denied promotion to a Grade GS-13 computer analyst position because he is black.
 
 
 6
 On May 26, 1983, Watts and the BOP entered into a settlement agreement and stipulation of dismissal, agreeing to dismiss the suit with prejudice pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure.[2] In consideration of Watts' promise to dismiss the suit, the BOP agreed, among other things, to "provide priority consideration to [Watts] on the next three positions for which he applies and for which he is eligible." Appendix at 17. The agreement was filed with, and approved by, the district court.
 
 
 7
 Contending that he had not yet received what he had bargained for under the terms of the settlement agreement, Watts submitted an application to show cause to the district court on August 21, 1986. In an affidavit accompanying the application, Watts stated that despite being "fully qualified" for three announced vacancies for Grade GS-13 computer specialists, he was passed over for each position. As a result, he asked the district court to direct the BOP to show cause why it should not be held in contempt for the alleged failure to comply with the terms of the agreement.
 
 
 8
 The district court, however, concluded that Watts had received all that he had bargained for in the agreement. The district court concluded that although it was true that Watts had applied for all three positions and had not been selected for any of them, the agreement provided only that Watts would receive "priority consideration" for three vacancies. The district court further concluded that Watts had received "priority consideration" in accordance with "applicable" BOP guidelines, and denied the application. This appeal followed.
 
 II.
 
 9
 A settlement agreement is a contract. Schneider v. Dumbarton Developers, Inc., 767 F.2d 1007, 1016 (D.C.Cir.1985). The construction of the contract is a question of law subject to de novo review by this court. Minority Employees at NASA v. Beggs, 723 F.2d 958, 961 (D.C.Cir.1981).
 
 
 10
 The governing legal principles that will guide our interpretation of the contract are found in the law of the District of Columbia. While Watts is a resident of the state of Maryland, it is the District that bears the more significant relationship to the parties and the transaction.
 
 
 11
 Watts is employed by the BOP in the District. The positions he sought were also located in the District. It appears that the settlement negotiations were primarily carried out in the District as well, by attorneys who practice here. Moreover, the settlement was executed in the District and filed with, and approved by, the United States District Court for the District of Columbia. Accordingly, we think it quite clear that District of Columbia law governs our interpretation of the settlement agreement. Clayman v. Goodman Properties, Inc., 518 F.2d 1026, 1030 n. 22 (D.C.Cir.1974).
 
 
 12
 Our first step in construing the agreement is to look to the language of the agreement itself as well as the circumstances surrounding its drafting, in an attempt to discern the parties' intent. Flack v. Laster, 417 A.2d 393, 397 (D.C.1980). The specific language disputed by the parties is the BOP's promise to "provide priority consideration to [Watts] on the next three positions for which he applies and for which he is eligible."
 
 
 13
 Watts contends that this language "guaranteed selection and promotion as a reasonable expectation of the parties." Appellant's Brief at 5-6. We are unable to agree with this construction.
 
 
 14
 The plain language of the agreement provides only for "consideration," not "selection." To consider is to give careful thought, examination, and deliberate attention to a particular subject or problem. Webster's New Collegiate Dictionary, 2d Ed., (1973). Consideration, in the present context, plainly implies a careful, deliberate process of selection, but it does not guarantee a particular result at the end of the process.
 
 
 15
 That the consideration due was to be a "priority" does not alter this result. Being accorded a priority conferred upon Watts a precedence or superiority in position. The precedence conferred, however, related only to consideration, not selection. Watts was entitled to have his applications for the desired positions considered prior to applications submitted by other candidates. The agreement did not guarantee that the consideration received would be entirely favorable, resulting in selection and promotion.
 
 
 16
 Our construction of "priority consideration" is buttressed by other language in the disputed clause. The parties agree that Watts was entitled to priority consideration for "three positions." If the parties had intended the agreement to guarantee selection, the provision for, in effect, three bites at the apple, would be superfluous. It is clear that the parties intended the BOP to retain some measure of discretion to reject Watts' applications following due consideration. Accordingly, we conclude that the agreement was not intended to guarantee Watts' selection and promotion.
 
 III.
 
 17
 The question remains, however, whether Watts received "priority consideration" on "three positions" for which he applied and "for which he was eligible." In concluding that Watts did receive such consideration, the district court referred to what that court viewed as "applicable BOP guidelines" on priority consideration.
 
 
 18
 Pointing to the integration clause[3] contained in the agreement, Watts vigorously contends that the district court erred in relying upon the BOP Placement Policy Guidelines in determining that the BOP had indeed accorded Watts with priority consideration. We agree.
 
 
 19
 Where, as here, a contract contains an integration clause, the written language embodying the terms of the agreement will govern the rights and liabilities of the parties, unless the language of the agreement is not susceptible of a clear and definite understanding. Scrimgeour v. Magazine, 429 A.2d 187, 188 (D.C.1981). As demonstrated in Section II, supra, the term "priority consideration" is susceptible of a clear and definite understanding without reference to other documents not expressly incorporated into the agreement by the parties. Accordingly, we will not refer to the BOP guidelines in determining whether Watts received priority consideration.
 
 
 20
 Notwithstanding this conclusion, it is clear that the three applications submitted by Watts were accorded superiority in position by the appropriate reviewing officials. In a sworn declaration filed in the district court by Deborah Hardeman, a staffing specialist at the BOP, she stated that when forwarding each of Watts' applications, she notified the selecting officials, in writing, that they must consider Watts' application before considering any other candidate. Moreover, in the memoranda informing Watts of his non-selection for each of the respective positions, it is stated that Watts received "priority consideration." Watts does not dispute the fact that his applications received precedence over those of all other competing applicants. Thus, we conclude that Watts indeed received priority consideration.
 
 
 21
 Finally, we must decide whether Watts received priority consideration for positions for which he was "eligible." If Watts was not "eligible" for any of the sought after positions, his non-selection for those positions could not be counted against him for purposes of adding up the three bites at the apple allotted to him under the agreement.
 
 
 22
 Nothing in the record indicates that Watts was ineligible for the three vacancies for which he applied. Watts has consistently maintained that he was "fully qualified" to fill each vacancy. In addition, in the memoranda informing Watts of his non-selection, the BOP acknowledged on two occasions that Watts had experience "relevant to the position," and on a third that he "[met] the requirements for the position." Consequently, on this record we cannot conclude that Watts was not "eligible" for the three positions at issue here. Thus, the record supports the district court's conclusion that Watts received priority consideration for the three positions for which he applied and for which he was eligible.
 
 
 23
 Based upon all of the foregoing, we conclude that Watts received all that he had bargained for in the settlement agreement. We express no view on any claim that may arise from Watts' non-selection for the three Grade GS-13 positions. We simply hold that Watts received the consideration that was due under the terms of the agreement. Accordingly, the decision of the district court is affirmed.
 
 
 
 [1]
 Watts had originally filed an "[A]pplication For An Order to Show Cause" in the district court. In an order filed September 25, 1987, we denied appellees' motion for summary affirmance and ordered that the case before the district court be properly viewed as a petition to enforce the terms of a settlement agreement
 
 
 [2]
 That rule provides that an action may be dismissed by the plaintiff without an order of the court by filing a stipulation of dismissal signed by all parties to the action
 
 
 [3]
 "This agreement contains the entire agreement of the parties hereto."