856 F.2d 1125
 57 USLW 2222, 12 Fed.R.Serv.3d 692, RICO
Bus.Disp.Guide 6890
 PHENIX FEDERAL SAVINGS & LOAN ASSOCIATION, F.A., Appellant,
v.
SHEARSON LOEB RHOADES, INC., k/n/a Shearson/American
Express, Inc., Appellee.
HANSEN-FRIEDRICHSEN, INC.; Dallas County Alcohol; Jerry
Hansen; Yvonne Hansen; Haupert Livestock, Inc.;
and Donald E. and Eloise Haupert, Appellants,
v.
SHEARSON LOEB RHOADES, INC., k/n/a Shearson/American
Express, Inc., Appellee.
SHEARSON LOEB RHOADES, INC., k/n/a Shearson/American
Express, Inc., Appellant,
v.
PHENIX FEDERAL SAVINGS & LOAN ASSOCIATION, F.A.;
Hansen-Friedrichsen, Inc.; Dallas County Alcohol; Jerry
Hansen; Yvonne Hansen; Haupert Livestock, Inc.; and
Donald E. and Eloise Haupert, Appellees.
 Nos. 86-1407 to 86-1409.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Aug. 8, 1988.
Decided Sept. 9, 1988.
 
 Robert T. Haar, St. Louis Mo., for appellant.
 Stephen Greiner, New York City, for appellee.
 Before McMILLIAN, ARNOLD and BOWMAN, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 This case developed from a complex series of financing deals for three ethanol plants in Iowa. The trial was bifurcated, the liability phase being tried first. The jury found that Shearson Loeb Rhoades, Inc., negligently misrepresented to the owners of the plants, Leonard Conrad, Jerry Hansen, and Donald E. and Eloise Haupert, and their related companies, that it would secure permanent financing of the plants by underwriting industrial development bonds. Shearson was also found to have broken a contract to provide this financing. In addition, the jury found that Shearson had negligently misrepresented to Phenix Federal Savings & Loan Association, which had provided interim construction financing for the plants, that it would "take out" Phenix by providing permanent financing. Finally, the jury found Shearson liable to Phenix for failing to secure permanent financing on the theory of promissory estoppel.
 
 
 2
 After the jury had assessed the plaintiffs' damages in the damages trial, the District Court[1] ruled on Shearson's motion for judgment n.o.v., granting it in part and denying it in part. Only part of that ruling is at issue here. Conrad and his related companies have settled with Shearson and dismissed their appeal. In addition, after oral argument Shearson and the Hauperts settled their part of the case, so it is no longer before us. The Hansen plaintiffs (whom we shall call "Hansen" for convenience) claim that the Court erred in granting judgment n.o.v. on their verdicts for breach of contract and in dismissing (before trial) their civil RICO claims, and Hansen argues further that the Court erred in granting judgment n.o.v. on his damages award for loss of credit reputation. Phenix argues that the Court erred in offsetting its damages against the proceeds of a subsequent bond issue that it had helped to arrange as a vehicle for permanent financing of the ethanol plants. As a defensive manuever, Shearson argues in its cross-appeal that, in the event we reverse any part of the judgment favorable to it, the District Court erred in denying its motion for judgment n.o.v. on other grounds it raised. Shearson also urges on cross-appeal that the judgment in favor of Hansen should be reversed or reduced for various reasons.
 
 
 3
 We affirm in all respects.
 
 I.
 
 4
 We turn first to the appeals of Hansen. As we noted, the jury found Shearson liable to him for breach of contract and negligent misrepresentation. Hansen and Hansen-Friedrichsen, Inc., together were awarded $3,801,105.95 on the contract claim, and $2,801,105.95 (the same damages, less $1 million for loss of credit reputation) on the tort claim. Since the jury had found that these plaintiffs were in part responsible for their damages because of their own negligence, the Court reduced the awards for negligent misrepresentation by the percentage of their fault. No one complains about this reduction.
 
 
 5
 Despite this reduction of the negligent-misrepresentation verdict, the full damages awards would still have been recoverable for breach of contract. But the Court granted judgment n.o.v. on the contract verdict, and this action prompted Hansen's appeal. Review of this ruling requires a brief discussion of the facts. Leonard Conrad was the "point man" for the three in their search for permanent financing. Through the fall of 1980, he negotiated with an officer of Shearson, and in December of that year the discussion culminated in a letter agreement between Shearson and Conrad Industries, Inc., a company Conrad had formed to build the ethanol plants, that Shearson would finance one of the plants, Van Buren County Alcohol. (Shearson also agreed to finance the other two plants, which would be owned by Hansen and Haupert, but those plants were never built, and Shearson's promise therefore never ripened into a duty to provide financing.) Conrad signed the agreement in his capacity as president of Conrad Industries.
 
 
 6
 This was the only agreement on which the jury could have based the contract verdict in favor of Hansen. But since he was not a party to the agreement, he had to search for other theories on which to base his claim. The Hansen plaintiffs found two; they alleged that they were third-party beneficiaries of the agreement to finance Van Buren County Alcohol and also that they were undisclosed principals whose agent, Conrad, had negotiated that agreement on their behalf. Plaintiffs put on evidence to support these theories, and the Court put the issues to the jury on special interrogatories asking (1) whether they had proved that Conrad, acting on their behalf, signed the letter as their agent, and (2) if not, then (and only then) whether they had proved that they were intended third-party beneficiaries of the agreement to finance Van Bureau County Alcohol. The jury found for Hansen and Haupert on the agency theory, so it did not reach the third-party beneficiary theory.
 
 
 7
 In granting judgment n.o.v., the Court held the evidence insufficient, as a matter of law, to prove that Conrad acted as an agent in signing the letter agreement. It ruled further that it was unnecessary to have a new trial to present the third-party beneficiary claim to a jury because the evidence on that issue was also legally insufficient. We find no error in these rulings. The December letter on its face shows that Conrad accepted the agreement as an officer of Conrad Industries. J.A. 533. Hansen's and Haupert's evidence of the alleged agency consisted primarily of the longstanding business and personal relationships they had had with Conrad over the years. But friends and business associates are not ipso facto legal agents for one another; though they may have deep trust and confidence in one another, they are not automatically invested with the (legally) greater power to bind each other to contracts.
 
 
 8
 Nor did the Court err in taking the third-party beneficiary issue from the jury. As Hansen acknowledges, under Iowa law "[t]he real test is ... whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." Bailey v. Iowa Beef Processors, Inc., 213 N.W.2d 642, 645 (Iowa 1973), cert. denied, 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974). The nearest that the evidence comes to showing this is the natural inference that Conrad, as the friend of Hansen and Haupert, hoped that they would profit by building the ethanol plants. But this falls short of the legal standard. There was no evidence to support a reasonable inference that Shearson intended that they benefit from the agreement with Conrad Industries to finance the Van Buren plant. Viewing these rulings with the degree of deference that they deserve (since they are applications of state law by a district judge sitting in that state), we find no error.
 
 
 9
 We also hold the Court was correct to dismiss the RICO counts that Hansen alleged. Our decisions require that a RICO plaintiff prove at least two separate schemes in order to demonstrate that a plaintiff has engaged in a "pattern" of racketeering activity within the meaning of the RICO statute. See, e.g., Holmberg v. Morrisette, 800 F.2d 205 (8th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1953, 95 L.Ed.2d 526 (1987); Superior Oil Co. v. Fulmer, 785 F.2d 252 (8th Cir.1986). The allegation here, that Shearson engaged in a course of fraudulent conduct relating to the financing of ethanol plants, amounts at most to an allegation of a single "scheme" under our cases, and therefore fails to state a claim.
 
 
 10
 Finally, we affirm the Court's grant of judgment n.o.v. on Hansen's $1 million jury verdict for loss of credit reputation. The Court stated, as a ground for this ruling, that "it is doubtful whether the Iowa Supreme Court would recognize loss of credit reputation as an element of damage in the absence of proof of malice or reckless disregard." Conrad Industries, Inc. v. Shearson Loeb Rhoades, Inc., Civil No. 82-383-A (S.D.Iowa Jan. 16, 1986), slip op. at 8. Hansen expends considerable energy arguing that this was an erroneous ruling of Iowa law. But we need not reach that issue, for the jury awarded Hansen loss-of-credit-reputation damages only on the breach-of-contract action; it expressly found that he suffered no loss of credit reputation as a result of Shearson's negligent misrepresentation. J.A. 286. As the Court ruled, without the contract verdict, there is no basis in fact for Hansen to recover that element of damages.
 
 II.
 
 11
 We turn now to Shearson's cross-appeal in the Hansen case. To the extent that this cross-appeal simply asserts an additional ground for upholding the judgment in Shearson's favor on the contract claim, we need not decide it. We have already upheld this judgment, for reasons given in Part I of this opinion. But Shearson's cross-appeal also challenges the judgment in favor of the Hansens for negligent misrepresentation, and that challenge has independent significance and must be addressed. Shearson presses two issues: (1) the evidence was insufficient to justify a jury verdict for negligent misrepresentation; and (2) the damages awarded to Hansen on this theory are excessive and duplicative.
 
 
 12
 We reject these arguments. The jury verdict comes to us with a heavy presumption of regularity, reinforced by the refusal of the able and experienced district judge to set it aside. If there is any substantial evidence that reasonable minds could accept as adequate to justify the verdict, we are obliged to uphold it. We hold that the evidence of negligent misrepresentation was legally sufficient. Although we initially believed that the verdict was excessive or duplicative in certain respects, we are now persuaded otherwise by the Hansen plaintiffs. Certain payments that Shearson argues went to reduce the Hansens' liability to Citizens State Bank, and thus their entitlement to damages against Shearson, may in fact have been credited against other obligations. The record is not clear on the point, and ambiguity must be resolved in favor of the jury's verdict. The judgment in favor of the Hansens for negligent misrepresentation is therefore affirmed.
 
 III.
 
 13
 We come now to Phenix's appeal. Phenix provided $1.6 million in interim construction financing for Van Buren County Alcohol, and the jury found that this loan was made in reliance on Shearson's representation that it would provide a "take-out" loan on the plant, i.e., that Shearson would secure a permanent loan that would be used to pay off Phenix's interim loan. When Shearson failed to provide that financing, Phenix began making advances to Van Buren County Alcohol in order to keep the plant afloat and protect its original loan. These advances, which the jury found to be consistent with prudent lending practices, eventually totalled over $2.75 million in principal and interest.
 
 
 14
 Eventually Phenix, Conrad, and Van Buren County Alcohol were able to work out permanent financing for the plant. Under this deal, closed in December 1984, the City of Bonaparte, Iowa, issued industrial revenue bonds and lent the proceeds to a newly formed company, MTJ, Inc., which bought the plant from Van Buren County Alcohol for $6.5 million. The $6.5 million was paid to Phenix to satisfy its outstanding loans. However, there were two keys to the deal that exposed Phenix to some risks. First, it agreed to subordinate its first mortgage on the plant, which it had taken as security for the interim-financing loan, to a mortgage in favor of the bond trustee, which had taken an assignment of MTJ's promissory note to the City. Second, Phenix agreed to issue an irrevocable letter of credit to the bond trustee for more than $8.25 million, which would be used to pay bondholders in the event MTJ defaulted on the loan. Phenix obtained a guarantee from Conrad and Van Buren County Alcohol that they would reimburse it for any payment it might make under the letter of credit. Of course, given its recent experience with those debtors, it could not be certain the guarantee would be good.
 
 
 15
 Phenix claimed the risk it faced in this deal as an element of consequential damages for which Shearson was responsible, and it asked the jury to determine how much it would likely lose on the letter of credit and award it that sum. The Court accepted this theory and instructed the jury:
 
 
 16
 Phenix Federal has received 6.5 million dollars from the proceeds of the MTJ bond issue. However, it has guaranteed the payment of principal and interest on those bonds in the event MTJ is unable to make the required payments as they become due. Phenix Federal has obtained guarantees from Leonard Conrad and Van Buren County Alcohol under which they are to reimburse Phenix Federal for whatever payments it would be called upon to make. In addition, Phenix Federal has a second mortgage on the alcohol plant.
 
 
 17
 Phenix Federal's liability for payments on the MTJ bonds is contingent upon the success of the alcohol plant, the value of the plant, and the guarantees of Leonard Conrad and Van Buren County Alcohol. It is for you to determine what, if any, amount Phenix Federal may be called upon to pay over the life of the bonds for which it will not be reimbursed, reduced to its present value. This amount, if any, would constitute damages....
 
 
 18
 It is also for you to determine the amount of damages, if any, sustained by Phenix Federal under its other claims for consequential damages, as a result of Shearson's negligent misrepresentations or promissory estoppel. The Court will then total the various items of damages that you have found were sustained by Phenix Federal as a result of Shearson's failure to provide permanent financing, and reduce that amount by 6.5 million dollars, or if the total damages [are] less than 6.5 million dollars, the Court will reduce Phenix Federal's recovery to zero. This is a matter for the Court and you must not give any consideration to the 6.5 million dollars in arriving at the amount of damages.
 
 
 19
 J.A. 258-59. Phenix did not lodge an objection to this instruction at trial.
 
 
 20
 The jury found that Phenix had been damaged in the amounts of $1.6 million on the original loan, $761,721 in foregone interest on that sum, $2,761,733 in principal and interest for subsequent advances to Van Buren County Alcohol, and $25,000 in expenses in overseeing the operations of the plant. It found that Phenix had not proved that it would suffer any loss on the letter of credit issued in connection with the MTJ bond deal. Since the jury found Phenix's damages to total less than $6.5 million, the Court entered judgment for Phenix against Shearson for $0, just as it had instructed the jury it would.
 
 
 21
 Phenix understandably complains bitterly about its failure to recover a dime in the judgment. It makes legal arguments against the offset of the bond proceeds against its award, but we do not need to reach them, for Phenix failed to object to the jury instruction it finds offensive and has therefore failed to preserve the alleged error for review.[2]
 
 Federal R.Civ.P. 51 states in part:
 
 22
 No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.
 
 
 23
 We do recognize an exception to this rule in those rare cases where the alleged error "is plain error in the sense that a miscarriage of justice would otherwise occur." Rowe International, Inc. v. J-B Enterprises, Inc., 647 F.2d 830, 835 (8th Cir.1981). But we emphasize the extremely narrow scope of this rule in civil cases; it lies "in only those exceptional cases where the error has 'seriously affected the fairness, integrity or public reputation of judicial proceedings.' " Morris v. Getscher, 708 F.2d 1306, 1309 (8th Cir.1983), quoting Rowe International, supra, at 835.
 
 
 24
 Phenix contends that a miscarriage of justice occurs for purposes of the plain-error rule whenever a party fails to receive substantially all that he is entitled to under the law, citing Sheppard Federal Credit Union v. Palmer, 408 F.2d 1369, 1372 (5th Cir.1969). This happened here, it argues, because the jury found Phenix entitled to more than $5 million, and the Court entered judgment for $0. The flaw in this argument is evident: under the applicable law Phenix was entitled to whatever it had lost on the loans to Van Buren County Alcohol, plus what it would lose on the letter of credit in the MTJ deal, less what it had received from that deal, $6.5 million. The jury found that Phenix had lost over $5 million on the loan to Van Buren County Alcohol, but had not proved that it would lose anything on the letter of credit. Therefore Phenix got exactly what it was entitled to.
 
 
 25
 Only if the statement of the applicable law contained in the jury instruction Phenix now complains of were egregiously wrong, and that statement produced a result substantially different from what would have resulted from a correct instruction, would we find plain error in this civil case. This did not happen here. The instruction at issue was, at worst, arguable, and it resulted at least in part from Phenix's own tactical position at trial. And in an adversarial system in which lawyers zealously represent their clients' interests, the occurrence, without objection, of an error gross enough, or a result skewed enough, to justify plain-error reversal in a civil case will be rare indeed. If we were to recognize plain error as easily as appellant wishes, we would reduce the trial courts to the status of mere masters. This would be a disaster for the orderly administration of justice.
 
 
 26
 Finally, Phenix seeks to avoid the effect of Fed.R.Civ.P. 51 by asserting error in the Court's admission of evidence of the MTJ transaction. But it admits that it failed to object to that evidence and must resort to the plain-error doctrine on review. See Fed.R.Evid. 103; Greger v. International Jensen, Inc., 820 F.2d 937 (8th Cir.1987). Again, we find no plain error.[3]
 
 The judgment is
 
 27
 AFFIRMED.
 
 
 
 [1]
 The Hon. William C. Stuart, Senior United States District Judge for the Southern District of Iowa
 
 
 [2]
 Phenix argues that it appeals not from the instruction, but from the Court's action in entering judgment for an amount less than the verdict. The Court told the jury that it, the Court, would reduce the jury's damages verdict by $6.5 million. This, the argument runs, was not an explanation of the law made to guide the jury's deliberation, but a declaration of the Court's intent to offset the jury's verdict; thus it was not a "jury instruction."
 We reject this argument. The instruction explained the law applicable to the case, as all jury instructions do. The Court instructed the jury that the law in this case required the offset, regardless of what it found Phenix's damages to be. If Phenix disagreed with this statement of the applicable law, it should have objected to the instruction.
 
 
 [3]
 We note that Phenix's counsel on appeal, who has urged the plain-error doctrine with great ingenuity, did not represent it at trial