**NOFZIGER COMMUNICATIONS, INC., Plaintiff,**

v.

**Frederick P. BIRKS, as Trustee of the Wynmark Trust, Defendant.**

**Civ. A. No. 90–602.**

United States District Court, District of Columbia.

Feb. 21, 1991.

As Amended April 2, 1991.

Christopher A. Myers, Clyde C. Pearce, Philip L. Sbarbaro, Grant L. Clark, Rivkin, Radler, Dunne & Bayh, Washington, D.C., for plaintiff.

Stephen D. Graeff, Carr, Morris & Graeff, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

### BACKGROUND

Plaintiff Nofziger Communications, Inc. ("Nofziger") brings this breach of contract action against Frederick P. Birks in his capacity as trustee of the Wynmark Trust (defendant is hereinafter referred to as

"Wynmark Trust"). The contracts in question originated when Nofziger entered into option agreements [1] with the Wynmark Development Corporation ("Wynmark Development"). In the agreements Nofziger gave Wynmark Development the option of purchasing interests in two limited partnerships that were in the business of acquiring and renovating improved real property located in the District of Columbia. As part of the contracts Wynmark Development agreed to reimburse Nofziger for any additional tax liabilities that Nofziger might incur as a result of the options being exercised. The contracts also provided that they "shall be binding upon, and shall in[ ]ure to the benefit of and be enforceable by, the respective ... assigns of the parties hereto." Option Agreements, paragraph 8(a).

Wynmark Development immediately assigned "all of its right, title and interest" under the options to Mark G. Griffin, Richard W. Naing, and the Wynmark Trust. Assignment and Escrow Agreement, page 3, paragraph 1. In August and September of 1988 these assignees exercised their options to purchase the limited partnership interests from Nofziger. As a result, Nofziger incurred additional tax liabilities, and Nofziger demanded that the assignees reimburse it for the additional tax liability. Wynmark Trust denies that it is liable and has refused to pay. Plaintiff Nofziger now brings this suit for reimbursement.[2]

Presently before this Court is Wynmark Trust's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and for failure to join a necessary party pursuant to FRCP 12(b)(7) and 19. In the alternative, Wynmark Trust moves this Court to consolidate the case with *Nofziger Communications, Inc., et al. v. Griffin, et al.,* Civil Action No. 89–3130 (D.D.C.) and to stay this proceeding

pursuant to Bankruptcy Code § 362 pending the conclusion of the Bankruptcy proceedings of Griffin and Naing. For the reasons set forth below, we deny defendant Wynmark Trust's motion in its entirety.

## DISCUSSION

### I. Failure to State a Claim

Defendant Wynmark Trust argues that plaintiff has failed to state a claim upon which relief can be granted because as a matter of law Wynmark Development—not Wynmark Trust or the other assignees—is liable for the additional tax liability that plaintiff incurred. Defendant asserts that under District of Columbia law assignees of a contract are not liable for obligations of the assignor unless they *expressly* assume those duties, and that Wynmark Trust did not expressly agree to reimburse Nofziger for its tax liability. Defendant admits that the District of Columbia cases he cites do not factually parallel the case at bar. Nonetheless, defendant argues that it should prevail because they stand for the fundamental principle that the mere assignment of rights does not impute the assumption of obligations by an assignee.

Establishing the fundamental principle, however, is not sufficient to prove that the express assumption rule applies in this case. Nofziger is not claiming that simply because Wynmark Trust accepted an assignment from Wynmark Development it automatically assumed Wynmark Development's obligations. Instead, Nofziger argues that the circumstances under which the Wynmark Trust accepted the assignment imply such an assumption of liability. Specifically, Nofziger points to two circumstances of the assignment from which it would be possible for the Court to impute an assumption of obligations: (1) the fact that Wynmark Development assigned all of its "rights, title and interest" in the contract to the assignees, and (2) the fact that

---

**1.** The two agreements were entitled "Option to Purchase Limited Partnership Interests in 1640 Wisconsin Avenue Associates" and "Option to Purchase Limited Partnership Interests in 514 Tenth Street Associates." Most of the provisions of the two agreements are identical. When quoting such identical provisions, we will simply cite to "Option Agreements, paragraph ___."

**2.** Nofziger sued the other two assignees for reimbursement in *Nofziger Communications, Inc., et al. v. Griffin, et al.,* Civil Action No. 89–3130 (D.D.C.), which was stayed in Bankruptcy.

the original assignment agreement allegedly made obligations of the parties binding on their assignees, and the assignees were aware of this provision when they accepted the assignment.[3]

■ At this stage of the litigation Wynmark Trust does not argue about whether these circumstances are sufficient to impute an assumption of liability. Instead, Wynmark Trust maintains that courts may not infer that assignees have impliedly assumed the obligations of their assignors. It argues that as a matter of law only an express assumption of obligations is sufficient to impute liability.

An examination of precedent reveals inadequate authority to support defendant's argument. To the extent that District of Columbia cases have approved and applied the express assumption rule, they have done so only under narrow circumstances not present in the case at bar. Moreover, although some jurisdictions seem to have accepted the express assumption rule as one of general applicability, the weight of that authority is insufficiently persuasive to show that Wynmark Trust's motion to dismiss should prevail. We will first address the District of Columbia cases upon which defendant Wynmark Trust relies, and then we will discuss other persuasive authorities on this issue. Because we deny defendant's motion to dismiss under an assignment theory, we do not reach plaintiff's arguments regarding an implied novation.

## A. *District of Columbia precedents*

As support for the express assumption rule, Wynmark Trust cites *Rittenberg v. Donohoe Construction Co.*, 426 A.2d 338, 341 (D.C.1981), *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007 (D.C.Cir. 1985), and *Dodek v. CF 16 Corp.*, 537 A.2d

1086 (D.C.1988).[4] A careful reading of those cases reveals that they do not negate the legal effect of an assignee's implied assumption of the assignor's obligations under the contract. At most, they carve out a narrow exception for cases in which a plaintiff attempts to hold an assignee liable for breaches of the contract that the assignor committed prior to the assignment. Moreover, it is unclear from those cases whether the District of Columbia would apply the express assumption rule in all past breach situations.

### 1. Rittenberg

In *Rittenberg*, Donohoe Construction Co., Inc. ("Donohoe") had rented real property to WGMS Radio ("WGMS"), which in turn had subleased it to Rittenberg, the appellant. At some point WGMS assigned the lease back to Donohoe, so that Rittenberg was paying rent to Donohoe directly and WGMS was no longer in the middle. After the sublease was over, Rittenberg claimed that WGMS had constructively evicted him, and otherwise breached the sublease agreement, during the time that WGMS was the sublessor. Rittenberg then tried to hold Donohoe liable for the breaches that WGMS committed in that intermediate time period.

The court made a concerted effort to distinguish between this past breach situation and the District of Columbia's general assignment rule. The court stated that "[t]he general rule is that an assignee of a chose in action takes it subject to all defenses, ... [h]owever, no independent cause of action against Donohoe for *past breaches* of the sublease by WGMS is created ..." 426 A.2d at 341 (emphasis added). Such a distinction makes sense. The very circumstance of an assignor committing breaches and then assigning the contract creates the suspicion that the assignor con-

---

**3.** The Trustee who signed the Assignment and Escrow Agreement for Wynmark Trust, Mark G. Griffin, had also signed the Option Agreement as Secretary for Wynmark Development. Thus, Wynmark Trust's representative knew about paragraph 8(a) when he accepted the assignment on the part of Wynmark Trust, and one possible understanding of the circumstances is that Wynmark Trust, acting through Griffin,

impliedly assumed Wynmark Development's obligations to Nofziger.

**4.** Defendant does not mention *Dodek* in his motion in this case, but *Dodek* is cited in the motion to dismiss filed in *Nofziger Communications, Inc., et al. v. Griffin, et al.*, Civil Action No. 89–3130, which defendant incorporates by reference into his motion.

cealed those breaches from the assignee. If the assignee did not know about the breaches, the assignee could not contract to assume them, either expressly or impliedly.

Moreover, if the assignee did know about those breaches, chances are likely that the assignee would not have assumed liability for those breaches when it accepted the assignment. On one hand, if the assignee accepted the assignment as consideration for a different promise, then the existence of a breach would probably decrease the value of that consideration or eliminate it altogether. On the other hand, if the assignment was a gift, the assignee might still hesitate to accept the unqualified assignment for fear of being sued by the harmed party. Of course, the assignee might calculate the potential damages and take a business risk that the value of the assignment would sufficiently outweigh damages from the breach and costs of litigation. Such a calculated investment, however, would in all likelihood be the subject of negotiations between assignor and assignee. At some point the assignee would probably make an express assumption of liability for the past breaches if the assignee intended to assume such liability. Thus, it is reasonable for the courts to demand proof that the assignee expressly assumed liability for the assignor's past breaches before imputing such liability.

Those considerations do not apply in other assignment situations, such as in the case at bar. Here, the Wynmark Trust (which was represented by Mark Griffin at the time of the assignment) clearly knew that Wynmark Development had agreed to reimburse Nofziger for any additional tax liability it might incur. Wynmark Trust knew that Nofziger would not incur tax liability unless, or until, the options were exercised. Furthermore, it was Wynmark Trust, rather than Wynmark Development, that took the action which triggered the reimbursement clause in the Option Agreement. Finally, although it is not clear from the briefs whether the assignees were able to make a precise calculation of how much additional tax Nofziger would owe as a result of their exercising their options when they did, in comparison to the *Rittenberg* case, they probably could calculate that amount with more accuracy than could Donahoe have calculated the potential damages for constructive eviction.

Clearly, then, even if *Rittenberg* implies that the District of Columbia might apply an express assumption rule under certain circumstances, the *Rittenberg* court did not approve it for all assignment cases. As explained above, the facts of the case at bar are sufficiently different from those in *Rittenberg* to eliminate any notion that *Rittenberg* supports an express assumption rule here.[5]

### 2. Schneider

The *Schneider* case further emphasizes that the District of Columbia endorses the

---

5. A close reading of *Rittenberg,* in fact, reveals that the court never addressed the issue of whether the assignee might have impliedly assumed the assignor's liability. According to the court, Rittenberg's theory was that because Donohoe had accepted the assignment Donohoe should automatically be held accountable for WGMS' past breaches, whether Donohoe had assumed liability or not. The court stated that "[a]n attempt to assert an independent cause of action against an assignee of lease for past breaches of the assignor, *which the assignee does not assume,* is a rare situation apparently, and this court has not had occasion to squarely address the issue." 426 A.2d at 341 (emphasis added).

In dismissing Rittenberg's claim, the court merely rejected Rittenberg's theory that accepting benefits of an assignment should automatically impute liability for the assignor's obligations under the contract. The court explained that "no independent cause of action against Donohoe for past breaches of the sublease by WGMS is created *merely by reason of the assignment of the sublease by WGMS to Donohoe."* 426 A.2d at 341 (emphasis added). The court then dismissed the claim, stating that "there [was] no allegation in appellant's complaint that Donohoe *assumed* the liability." *Id.* (emphasis added). The court did not say that it dismissed the claim because there was no allegation in appellant's complaint that the assignee *expressly* assumed the liability. The court dismissed because Rittenberg failed to allege any assumption at all.

Such a ruling does not preclude the possibility of finding that an assignee had impliedly assumed the assignor's obligations, as long as it did assume them one way or another. In the case *sub judice* Nofziger has alleged that Wynmark Trust impliedly assumed the duty to reimburse Nofziger for its additional tax liability. Thus, the holding of *Rittenberg* does not support Wynmark Trust's motion to dismiss.

express assumption rule only under narrow circumstances. The court applied the express assumption rule only because the plaintiff was attempting to hold an assignee liable for past breaches by the assignor. The court first laid down the general rule: "Under District of Columbia law an assignee is responsible only for those obligations of the assignor that he contracts to undertake." 767 F.2d at 1018. The court then stated: "He is only liable for *past breaches* if he has 'expressly assumed[d] any duties correlative with the right assigned, there being no implication of assumption by the mere assignment.'" *Id.* (emphasis added), *citing Rittenberg v. Donohoe Construction Co.*, 426 A.2d 338, 341 (D.C.1981). Thus, the *Schneider* court followed *Rittenberg* in recognizing a special exception for past breach situations.

In the instant case, Nofziger is not attempting to hold Wynmark Trust responsible for past breaches of Wynmark Development. Wynmark Trust was the party, acting after it received the assignment with full knowledge that its actions may give rise to additional tax liability for Nofziger, that triggered the reimbursement clause in the Option Agreement. Therefore, *Schneider* is inapposite and does not support Wynmark Trust's argument that as a matter of law the Wynmark Trust is absolved of responsibility for Nofziger's additional tax liability merely because Wynmark Trust did not expressly assume that liability.

### 3. Dodek

In *Dodek*, the plaintiffs sought additional compensation for undeveloped lots they had sold to Mason, Bernstein, and Cohen ("the old MBC"), on the grounds that a special clause in their contract providing for a retroactive increase in the sale price had been triggered. The special clause provided that if the old MBC subsequently paid more per square foot for any of the neighboring lots than they had paid for the

Dodeks' lots, then the Dodeks would be entitled to the difference between their selling price per square foot and that of their neighbors. The old MBC paid a higher price for one of the neighboring lots. Plaintiffs eventually brought suit, seeking to impose liability not only on the old MBC, but also on the successor and assign ("the present MBC partnership") of the old MBC and on CF 16 and its partnership, 1001 Pennsylvania Avenue Associates, the successors in interest to the present MBC partnership.

On one hand, *Dodek* is factually closer to the case at bar than is *Rittenberg* or *Schneider* because the assignees in *Dodek* clearly knew about the special clause and could more easily calculate the amount of liability that they would be assuming.[6] On the other hand, it was the assignor—the old MBC—and not the assignees that triggered the special clause by purchasing a neighboring lot for a higher price.[7]

More importantly, however, is that the court did not discuss the express assumption rule. In refusing to hold the assignees liable, the court stated: "Because we find no evidence in the record that the present partners in MBC, all subsidiaries of Cadillac–Faiview, assumed the obligations previously incurred by the old MBC, we find no grounds on which to impose liability on the present MBC partnership, or on CF 16 Corporation." *Dodek*, 537 A.2d at 1098. The court did not say that the record lacked evidence that the partners had *expressly* assumed the previous obligations. The court merely said that the trial record lacked evidence that the partners had *assumed* any previous obligations. Therefore, *Dodek* cannot be read to support the express assumption rule at all.

### B. *Persuasive authority regarding the express assumption rule*

Wynmark Trust admits that no District of Columbia cases are factually on point,

---

6. "Under the plain language of the ... clause, therefore, the Dodeks are entitled to a $45 per-square-foot increase in the price paid to them for lots 819 and 20." 537 A.2d at 1096.

7. "Settlement on lot 820 occurred in June 1980, when MBC purchased the lot at a cost of $200 per square foot. This was a cost to Mason,

Bernstein, and Cohen of $45 per square foot more than they had agreed to pay for the Dodek lots with the same frontage in October 1979." 537 A.2d at 1096. "In October 1980, Mason, Bernstein, and Cohen formally assigned the Dodek contracts to MBC." *Id.,* at 1088.

but makes the further argument that the express assumption rule is well known generally, and is followed in the District of Columbia even though it has not been litigated specifically. To support this claim, Wynmark Trust cites three cases from other jurisdictions to show that most jurisdictions accept the express assumption rule as one of general applicability.

It may be true that some jurisdictions have expanded their use of the express assumption rule beyond land contracts and past breaches into a rule of general applicability. *See, e.g., Sillman v. Twentieth Century–Fox Film Corp.,* 3 N.Y.2d 395, 165 N.Y.S.2d 498, 503, 144 N.E.2d 387, 391 (1957) ("whatever the law may be elsewhere ... it is well settled in this State that the assignee of rights under a bilateral contract does not become bound to perform the duties under that contract unless he expressly assumes to do so") (citations omitted). Nevertheless, a review of the law in other jurisdictions reveals that many jurisdictions have applied the express assumption rule only in a few narrow situations,[8] leaving the possibility open for the courts to infer an assumption of duties based on the circumstances of the assignment.[9] In view of the fact that District of Columbia courts have applied the express assumption rule only under narrow circumstances, we refuse to expand the rule into one of general applicability, and therefore afford Nofziger the opportunity to prove that Wynmark Trust impliedly assumed liability for Nofziger's additional tax liability.

## II. Failure to Name a Necessary Party

■ In the alternative defendant moves for this Court to dismiss Nofziger's claim under FRCP 12(b)(7) for failing to name a party necessary to the proceedings according to FRCP 19. Defendant simply argues that when a duty is delegated, the delegating party remains liable, and therefore Wynmark Development continues to remain liable for obligations for which it originally contracted in the Option Agreements.

This argument is insufficient to warrant dismissing plaintiff's claims. Even if Wynmark Development is a necessary party, dismissal would not be proper unless joining Wynmark Development is not feasible and proceeding with the action without Wynmark Trust would be inequitable considering all the factors listed in Rule 19(b). *See* FRCP 19; *see also* 2A *Moore's Federal Practice,* para. 12.07[2.–6] (2d ed. 1989). Defendant discusses neither the feasibility of joining Wynmark Development nor the factors relevant to determining whether Wynmark Development is indispensable to further proceedings. Therefore, this Court has no grounds upon which it could dismiss the case for failure to join a necessary party, even if it found that Wynmark Development was such a party.

## III. Consolidation

■ Wynmark Trust's final argument is that this Court should consolidate the case

---

**8.** *See, e.g., Pumphrey v. Kehoe,* 261 Md. 496, 276 A.2d 194, 199 (1971) (refusing to introduce parole evidence to infer an assumption of duties because the assignment was of a contract for the sale of land); *Marriott v. Harris,* 235 Va. 199, 368 S.E.2d 225, 237 (1988) (no implied assumptions of liability when assignment was for security), *quoting* Va.Code § 8.2–210(4) (Official Comment) ("Subsection (4) lays down a general rule of construction distinguishing between a normal commercial assignment, which substitutes the assignee for the assignor both as to rights and duties, and a financing assignment in which only the assignor's rights are transferred.")

*See also* Restatement (Second) of Contracts § 328 and Comments (caveat on contracts for the sale of land); Williston on Contracts (3rd Ed.), § 418A, page 109 (explaining that "[t]he analogy to the transfer of mortgaged lands has

doubtless been influential" in maintaining the express assumption rule in the context of assignments of contracts for the sale of land).

**9.** *See, e.g., East Vedado Corp. v. E.S. Adkins & Co.,* 157 Md. 416, 146 A. 385, 386 (1929) ("[t]he authorities hold: 'That a liability of this kind can result only from some express *or implied* contract of the assignee'") (citations omitted) (emphasis added); *Pargman v. Maguth,* 2 N.J. Super. 33, 64 A.2d 456, 459 (1949) ("an assignee of a contract is usually not liable to the other contracting party to the contract assigned, unless such liability has been expressly *or impliedly* assumed"); *Haarmann v. Davis,* 651 S.W.2d 134, 136 (Mo.1983) ("under certain circumstances, an assignee may be held ... to have impliedly assumed the contractual obligation of the assignor").

at bar with *Nofziger Communications, Inc., et al. v. Griffin, et al.*, pursuant to FRCP 42(a), and should stay the action pursuant to 11 U.S.C. § 362 ("Section 362"), pending the outcome of Bankruptcy Court proceedings against co-assignees Griffin and Naing. Defendant argues that the two cases meet Rule 42(a)'s standards for consolidation because they involve identical questions of law and fact. Defendant then argues that once the Court consolidates the case at bar with the action against Griffin and Naing, the language of Section 362 will require the Court to stay proceedings against Wynmark Trust. Specifically, defendant claims that Section 362 will apply because the consolidated action will constitute the "continuation ... of a judicial ... proceeding against the debtor that was ... commenced before" the debtors (Griffin and Naing) filed bankruptcy petitions under Section 362.

The language of Section 362 is not so unambiguous that we can apply it to the facts before us in only one way. Contrary to Wynmark Trust's assertions, a perfectly reasonable reading of the language of Section 362 is that a bankruptcy petition operates as a stay of a judicial proceeding against *the debtor*, but does not stay proceedings against other parties within the same action. In fact, many courts have interpreted the language of Section 362 exactly that way. *See Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir.1984) ("The language of the statute extends stay proceedings only to actions 'against the debtor.' There is nothing in the statute which purports to extend the stay to causes of action against solvent co-defendants of the debtor."), *citing Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124 (4th Cir.1983); *Wedgeworth v. Fibreboard*, 706 F.2d 541 (5th Cir.1983); *Pitts v. Unarco Industries, Inc.*, 698 F.2d 313 (7th Cir.1983); *see also Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir.1983). Moreover, such an interpretation reflects the legislative purposes behind the automatic stay. *See*

*Fortier*, 747 F.2d at 1330 (discussing legislative history of Section 362).

Therefore, we would not stay the proceedings against Wynmark Trust even if we decided to consolidate the action *sub judice* with the prior action against Griffin and Naing. Given that conclusion, we will exercise our discretion under FRCP 42(a) [10] and refuse defendant's motion to consolidate the case at bar with *Nofziger Communications, Inc., et al. v. Griffin, et al.*, Civil Action No. 89–3130 (D.D.C.).

## CONCLUSION

Upon consideration of defendant's motion to dismiss or in the alternative to consolidate and stay, plaintiff's opposition, defendant's reply, and the entire record herein, and it appearing to the Court that genuine issues of material fact exist as to whether defendant Wynmark Trust assumed the obligation to pay Nofziger's additional tax liability, we find that plaintiff has stated a claim upon which relief can be granted. In addition, we find that dismissal is not warranted for failure to join Wynmark Development as a party. Finally, we find that defendant may not take advantage of the automatic stay currently operating in *Nofziger Communications, Inc., et al. v. Griffin, et al.*, Civil Action No. 89–3130 (D.D.C.). We therefore deny defendant's motion in its entirety.

An Order consistent with the above has been filed this date.

10. FRCP 42(a) provides that a court "may" consolidate cases with common issues of law and fact, but does not require a court to do so, even if the facts of the actions are identical.