NOFZIGER COMMUNICATIONS, INC., Plaintiff,

v.

Frederick P. BIRKS, as Trustee of the Wynmark Trust, Defendant.

Civ. A. No. 90–602.

United States District Court, District of Columbia.

Oct. 7, 1991.

Philip L. Sbarbaro, Christopher A. Myers, Rivkin, Radler, Dunne & Bayh, Washington, D.C., for plaintiff.

Stephen D. Graeff, Philip M. Schwartz, Krupin, Carr, Morris & Graeff, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff Nofziger Communications, Inc. ("NCI") brings this breach of contract action against defendant Frederick P. Birks in his capacity as trustee of the Wynmark Trust (defendant is hereinafter referred to as "Wynmark Trust"). Before the Court are NCI's motion for summary judgment, Wynmark Trust's motion for summary judgment, and their respective replies.

### I.

The parties do not dispute the following facts. In 1983, Mark Griffin and Richard Naing formed two limited partnerships, 1640 Wisconsin Avenue Associates ("1640") and 514 Tenth Street Associates ("514"), under two virtually identical limited partnership agreements. *See* 1640 Wisconsin Avenue Associates Limited Partnership Agreement ("1640 Agreement"); 514 Tenth Street Associates, A District of Columbia Limited Partnership Limited Partnership Agreement ("514 Agreement"). By the end of 1984, Wynmark Development Corporation ("Wynmark Development") was the sole general partner of each limited partnership. Mark G. Griffin Deposition Exhibit No. 17 at ¶ 3.05 ("Deposition Exhibit"); Agreement of August 27, 1984 at ¶ 3.05.

On August 27, 1984, NCI purchased a 40% limited partnership interest in 1640. Agreement of August 27, 1984. On December 6, 1984, NCI purchased a 66% limit-

ed partnership interest in 514. Deposition Exhibit No. 17. In both instances, Wynmark Development signed the agreement on behalf of the limited partnership. At all times, Wynmark Development retained a 1% interest in each limited partnership. Deposition Exhibits 11, 12, 14, 15; Deposition of Mark G. Griffin ("Griffin Deposition") at 46.

On or about April 29, 1987, NCI entered into two Option Agreements with the Wynmark Development under which Wynmark Development could repurchase NCI's interests in the two limited partnerships.[1] Each agreement contained an "Investment Recapture" provision under which Wynmark Development agreed to pay NCI "any tax liability incurred by [NCI] ... caused by [Wynmark Development's] exercise" of the Options. Option Agreements ¶ 5. The agreements also provided that they would be "binding upon, and shall inure to the benefit of and be enforceable by, the respective personal representatives, heirs, successors and assigns of the parties hereto." Option Agreements ¶ 8(a).

On or about the same date (April 29, 1987) that the Option Agreements were signed with NCI, Wynmark Development signed an Assignment and Escrow Agreement under which Wynmark Development assigned "all of its right, title and interest" under the Option Agreements to the Wynmark Trust, Griffin, and Naing. Deposition Exhibit No. 22 at 3. NCI was also a signatory to this agreement. *Id.* at 6.

Slightly over one year later, on August 30, 1988, Griffin, in a letter to NCI which he explicitly stated was written in his capacity as Executive Vice President of Wynmark Development, exercised the Option to purchase the interest in 1640. Deposition Exhibit No. 24. On September 22, 1988, the 514 Option was similarly exercised. Deposition Exhibit No. 26.

During most, if not all, of this critical time period when the Options were exercised, Griffin was also acting as the trustee of the Wynmark Trust. While the record

1. The two option agreements were substantially identical. When quoting such identical provisions, we will cite to "Option Agreements ¶ __."

before us includes a letter dated August 26, 1988 (*i.e.*, before the first Option was exercised) from Griffin resigning as trustee of the Wynmark Trust, Deposition Exhibit No. 8, Mr. Griffin stated (in uncontradicted testimony) at his deposition that this letter was prepared for his signature and signed by him undated. Griffin Deposition at 30. Mr. Griffin said that he actually did not cease performing his duties as trustee until late September or early October, 1988. *Id.* at 31. Frederick Birks confirmed his acceptance of the trusteeship of the Wynmark Trust in a letter dated September 26, 1988 (*i.e.*, after the second Option was exercised). Deposition Exhibit 10.

Defendant has not contested that as a result of the exercise of these Options, plaintiff NCI incurred additional tax liabilities in the amount of $165,634. Deposition Exhibit No. 23; Griffin Deposition at 64–66. NCI subsequently made numerous demands for reimbursement from the assignees of the Options. Deposition Exhibit Nos. 29, 30, 32, 33, and 35. Defendant Wynmark Trust denies that it is liable and has refused to pay.[2] Plaintiff NCI thus brought this suit seeking reimbursement.[3] We now consider plaintiff's and defendant's motions for summary judgment.

## II.

Pursuant to FRCP 56(c), summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact." Because the material facts are undisputed, summary judgment may be rendered on the cross-motions.

The first step in resolving this question, *i.e.* whether NCI is entitled to reimbursement from the Wynmark Trust for its tax liability incurred as a result of the exercise of the Option Agreements, is to determine in what capacity Mark Griffin was acting when he exercised the Options. If Griffin exercised the Options on behalf of the Wynmark Trust, the Trust would be liable for the reimbursement of the recaptured investment tax credits per the Option Agreements. However, if Griffin merely exercised the Options on behalf of Wynmark Development and no one else, the Trust may not be held liable for NCI's mistaken decision to allow the assignor of the Options, Wynmark Development, to "exercise" Options that it had previously assigned away in the Assignment and Escrow Agreement of April 29, 1987.

Defendant Wynmark Trust urges that it is not liable because the Options were not exercised by it. As recounted above, Griffin, in letters of August 30 and September 22, 1988 in which the Options were exercised, stated that he was doing so in his capacity as an officer of Wynmark Development.[4] If this alone were the only relevant fact, defendant would prevail. This is because at the time the Options were exercised, Wynmark Development no longer had the authority to exercise the Options for itself having previously on April 29, 1987 assigned "all of its right, title and interest" to Griffin, Naing, and the Wynmark Trust. This assignment extinguished any right to performance that Wynmark Development had briefly held. *See Restatement (Second) of Contracts* § 317(1) (1981). Wynmark Trust, therefore, could not be liable to NCI for reimbursement because no assignee had exercised its op-

---

2. Defendant initially filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and for failure to join a necessary party pursuant to FRCP 12(b)(7) and 19, or, in the alternative, to consolidate this action with *Nofziger Communications, Inc., et al. v. Griffin, et al.,* C.A. No. 89–3130 (D.D.C.) and stay the proceeding pending the conclusion of the Bankruptcy proceedings of Griffin and Naing. This Court denied those motions. *Nofziger Communications, Inc. v. Birks,* 757 F.Supp. 80 (D.D.C.1991).

3. NCI sued the other two assignees for reimbursement in *Nofziger Communications, Inc. et al. v. Griffin, et al.,* C.A. No. 89–3130 (D.D.C.), which was stayed in Bankruptcy and subsequently dismissed.

4. These letters were also written on Wynmark Development stationery and completely ignored the fact that Wynmark Development had on April 29, 1987 assigned its rights under the Options. *Nemo dat quod non habet.*

tion, and thus no duties of the assignees arose.

■■■ Plaintiff, however, contends that because Griffin was the trustee of the Wynmark Trust at the time of the exercise of the Options,[5] the Trust exercised the Options. While a trustee does not have to state explicitly that he is acting in that capacity for his actions to bind the trust,[6] where the trustee explicitly states that he is acting on behalf of another entity, in this case as Executive Vice President of Wynmark Development, his actions should not, barring other facts, be considered those of Wynmark Trust. *See Peyser v. American Sec. & Trust Co.,* 107 F.2d 625, 626 (D.C.Cir.1939); *Phenix Fed. Savings & Loan Ass'n v. Shearson Loeb Rhoades, Inc.,* 856 F.2d 1125, 1127–28 (8th Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989); *Viso v. Werner,* 471 Pa. 42, 369 A.2d 1185, 1188 (1977). While plaintiffs are correct that Griffin possessed the authority at the relevant points in time to have exercised these Options, the explicit and unambiguous language of his letters exercising the Options states that he was not acting in his capacity as trustee. Just because someone is a trustee does not mean that every act he takes should be imputed to the trust. Where a trustee explicitly states that he is acting in another capacity, the Trust should not, barring fraud or misrepresentation, be considered a party to those actions.

Our inquiry, however, does not end there. The wrinkle in the instant dispute is that Wynmark Development was both the assignor of the Options in question and the general partner of the 1640 and 514 limited partnerships whose limited partners were Naing, Griffin, and the Wynmark Trust. Deposition Exhibits 13, 16. Therefore, plaintiff argues, when Griffin "exercised" the Options in his capacity as an officer of Wynmark Development, he was doing so because Wynmark Development was the general partner of a limited partnership whose limited partners were the rightful assignees. Wynmark Development, thus, was not exercising an option which it had earlier assigned away, but exercising an option as a general partner on behalf of its limited partners.

Plaintiff relies upon the broad powers conferred on the general partner by the 1640 and 514 Limited Partnership Agreements to support its assertion that NCI was acting as a general partner on behalf of its limited partners when it exercised the Options. Specifically, each agreement states that "[n]o person, firm or corporation dealing with the Partnership shall be required to inquire into the authority of the General Partner to take any action or make any decision." 1640 Agreement § 6(b); 514 Agreement § 6(b). In addition, the agreements state that "[b]y executing [these] Agreement[s], each Limited Partner shall be deemed to have consented to any assignment consented to by the General Partner." 1640 Agreement § 7(e); 514 Agreement § 7(e). Plaintiff also draws attention to the fact that Wynmark Development always maintained a 1% interest in each limited partnership.

■■■ This argument also fails. Plaintiff's argument that Wynmark Development had inherent total authority for all of

---

5. In spite of the fact that Mr. Griffin's letter of resignation as trustee is dated before the first Option was exercised, the fact that this letter was, as discussed above, backdated forces the Court to disregard this evidence as it is not probative of when Mr. Griffin effectively ceased to control the Wynmark Trust. Instead, the uncontradicted evidence shows that Griffin acted as trustee at least until September 26, 1988, when defendant Birks sent a letter to Naing accepting the trusteeship. *See* Plaintiff Exhibit 10; Griffin Deposition at 31. Thus, Griffin may well have been the trustee of Wynmark Trust when each of the Options was exercised. But, as defendant points out, it is irrelevant whether Griffin had legal authority as Trustee of the Wynmark Trust to exercise the Options because the Options were not exercised by him as Trustee of the Wynmark Trust or written on behalf of the Wynmark Trust.

6. A trustee is essentially a specialized agent, and trustees are subject to the rules of agency. *Restatement (Second) of Agency* § 14B (1958). It is axiomatic that an agent may bind his principal even if the agent does not state that he is, at that time, acting as an agent. *See Peckarsky v. American Broadcasting Co.,* 603 F.Supp. 688, 692 (D.D.C.1984).

the limited partnerships' decisions and actions evades the fundamental issue. The Options in question were not assigned to 1640 and 514; they were assigned to Griffin, Naing, and the Wynmark Trust. Thus the inherent authority of the general partner is not at issue because the Options were not the partnerships' to exercise in the first place.

Finally, to require Wynmark Trust to repay the investment credit lost by NCI would require one to be blind to the fact that legally the Options were not exercised by their true owners. NCI was negligent in permitting the transaction to go forward when it knew all the facts.

Accordingly, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted. Judgment is entered for defendant and this case is dismissed.