**NOFZIGER COMMUNICATIONS, INC., a District of Columbia Corporation, Appellant,**

v.

**Frederick P. BIRKS, as Trustee of the Wynmark Trust, Respondent.**

**No. 91–7186.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 4, 1992.

Decided April 13, 1993.

Philip L. Sbarbaro, Washington, DC, with whom Lawrence H. Schwartz, Washington, DC, was on the brief, for appellant. Christopher A. Meyers, Lawton, OK, also entered an appearance for appellant.

Philip M. Schwartz, with whom Stephen D. Graeff, Washington, DC, was on the brief, for appellee.

Before MIKVA, Chief Judge; EDWARDS and HENDERSON, Circuit Judges.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellant Nofziger Communications, Inc. (NCI) appeals from a summary judgment in favor of appellee Frederick P. Birks, trustee of the Wynmark Trust (Trust). The district court ruled that the language of letters written by the Trust's former trustee purporting to exercise certain options held by the Trust conclusively established that the trustee intended to exercise the option in a capacity other than as trustee and therefore not on behalf of the Trust. Because evidence outside the letters supports a finding that the trustee intended to exercise the options on behalf of the Trust, we reverse the district court's judgment and remand for further proceedings.

The following facts are undisputed. In 1984, NCI purchased from Wynmark Development Corporation (Development) interests in two limited partnerships: a 40% interest in 1640 Wisconsin Avenue Associates (1640) and a 66% interest in 514 Tenth Street Associates (514). Development, which was solely owned by two individuals, Mark Griffin and Richard Naing, retained a 1% interest in and was the sole general partner of each of the limited partnerships.

On April 29, 1987, NCI and Development entered into two written option agreements, each of which granted to Development the option to purchase NCI's limited partnership interest in one of the two partnerships. Each agreement provided that Development was to "exercise the option by paying the option price" and, in the event it did so, to compensate NCI, under an "Investment Recapture" provision, for "any tax liability incurred by [NCI] by virtue of the tax credit recapture caused by Grantee's exercise of this option and purchase of the Limited Partnership interest." Joint Appendix (JA) 47, 48, 50, 51.

On the same day the option agreements were signed, NCI, Development, Trust,[1] Naing and Griffin entered into an "Assignment and Escrow Agreement" under which Development "assign[ed] to Griffin, Naing and the Wynmark Trust all of its right, title and interest" under each option and stipulated that upon exercise of the options the transferred limited partnership interests were to be divided among the three assignees so that Griffin and Naing would each receive 44.5% and the Trust the remaining 10%.[2] JA 55. The agreement also provided that amended limited partnership certificates reflecting the transfers were to be created and held in escrow until such time as the options might be exercised.

In 1988, Griffin wrote two separate letters to NCI purporting to exercise the two options, the first on August 30, 1988, for 1640, and the second on September 22, 1988, for 514. For the purpose of this appeal, it is undisputed that on both of those dates Griffin was both executive vice-president of Development and trustee of the Trust.[3] Each exercise letter was written on Development stationery and bore a similar heading:

Re: Option to Purchase Limited Partnership Interests in [Partnership name] Dated April 29, 1987 ("Agreement") by and between Nofziger Communications, Inc. ("Grantor") and Wynmark Development Corporation ("Grantee")

JA 99, 100. The body of each stated in part:

I am writing to you as executive Vice President of the Grantee. The Grantee hereby exercises its option to purchase Grantor's ... limited partnership interests in [partnership name] pursuant to the terms and conditions of the Agreement effective as of the date of this letter. Enclosed is a check in the amount of [exercise price] which is the option price calculated pursuant to the Agreement.

JA 99, 100. Accompanying each letter was a check drawn on an account in the name

---

1. Wynmark Trust was formed in 1986 by Griffin and Naing as an irrevocable trust for the benefit of their children.

2. Development was to retain its 1% general partnership interest in each partnership.

3. Appellee Birks, a longtime associate of Naing, replaced Griffin as trustee on September 26, 1988.

of "Wynmark Properties" and a letter from Griffin's lawyer Ed Bloom to NCI's accountant. Each of the two letters from Bloom purported to be written in his "capacity as counsel to Richard Naing and Mark G. Griffin" and states in part:

> Pursuant to our telephone conversation yesterday and the enclosed letters from Mark G. Griffin, Wynmark Development Corporation is hereby exercising its option to reacquire . . . all of Nofziger Communications, Inc.'s interest in [the named partnership] pursuant to . . . that certain Option to Purchase Limited Partnership Interests in [the named partnership] dated April 29, 1987, by and between Nofziger Communications, Inc., and Wynmark Development Corporation. Enclosed herewith are copies of the Agreements and a check made payable to Nofziger Communications, Inc., in the amount of [applicable payment amount].

JA 599, 604. On the same day the 1640 option was exercised, the property was sold to a third party. According to Naing, he sold his interest in 514 to Griffin sometime before March 27, 1989.

It is uncontested that, as a result of losing its interests in the two partnerships, NCI has incurred recapture tax liability of $165,634. On March 16, 1990, NCI filed this action seeking compensation for this amount from the Trust, pursuant to the investment recapture provisions in the option agreements.

On cross-motions for summary judgment, the district court granted judgment in Birks's favor, concluding that because Griffin's letters expressly stated he was acting in his capacity as executive vice president of Development, which had assigned away its right to exercise the options, rather than in his capacity as trustee of the Trust, to which the rights had been assigned, Trust cannot be held accountable for any loss NCI incurred as a result of the exercise. NCI appeals that judgment on the ground that the district court erroneously resolved issues of fact in Birks's favor by ignoring evidence that Griffin actually intended to and did exercise the option on behalf of the Trust, despite the form of the exercise letters. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one "that might affect the outcome of the suit under the governing law" and "the dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We agree with NCI that the evidence before the district court gave rise to genuine issues of material fact and that the court therefore erred in granting summary judgment in Birks's favor.

■ In reaching its decision, the district court reasoned that Griffin's letters conclusively established that he was exercising the options on behalf of Development, rather than the Trust, and that the Trust therefore could not be held liable under the investment recapture provisions of the option agreements. The court explained:

> While a trustee does not have to state explicitly that he is acting in that capacity for his actions to bind the trust, where the trustee explicitly states that he is acting on behalf of another entity, in this case as Executive Vice President of Wynmark Development, his actions should not, barring other facts, be considered those of Wynmark Trust. *See Peyser v. American Sec. & Trust Co.*, 107 F.2d 625, 626 (D.C.Cir.1939); *Phenix Fed. Savings & Loan Ass'n v. Shearson Loeb Rhoades, Inc.*, 856 F.2d 1125, 1127–28 (8th Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989); *Viso v. Werner*, 471 Pa. 42, 369 A.2d 1185, 1188 (1977).

*Nofziger Communications, Inc. v. Birks*, 774 F.Supp. 662, 665 (D.D.C.1991). While we do not quarrel with the district court's general statement of the law, we disagree with its conclusion because we find there were "other facts" here indicating Griffin intended to exercise the option on behalf of the Trust.

First, it is at least reasonable to infer that Griffin intended to make a legally effective exercise of each option and that he therefore intended to act in his capacity as trustee, the only capacity in which he could do so under the assignment agreement. That he wrote the letters on Development stationery and referred in them to Development and to his position as that company's vice president is not dispositive of a contrary intent, given the evidence that Griffin and Naing treated all of their business entities, including Development and the Trust, as parts of a single enterprise, drawing no clear distinctions among them. Regarding the option assignment, for example, Griffin testified:

> The original assignee was Wynmark—I mean the original grantee was Wynmark and they assigned it to me and Richard and the Trust, so I guess we were doing it as a nominee for what we—we didn't make much distinction between Wynmark, Mark Griffin, Richard Naing or the trust. They were all virtually fungible for a lot of this stuff because everything was—you know, in order to maintain our business momentum, we pretty much had to look at things that way. There was an intent at some point to add it all up and do an accounting somewhere down the line.

JA 378. Griffin also described the "Wynmark Properties" account, on which the checks accompanying his exercise letters were drawn, as a sort of all-purpose account, through which he and Naing "ran everything" because the number of separate accounts they had earlier maintained for the various entities "got to the point where it was physically burdensome." JA 72. We find this evidence sufficient to support the inference that Griffin intended to exercise the options on behalf of the Trust, despite the language of the exercise letters, and therefore to preclude summary judgment in Birks's favor.[4] In so finding,

we reject Birks's contention that the "parol evidence rule" limits our review to the language of the letters themselves. Assuming without deciding that the parol evidence rule applies to the letters,[5] we conclude it does not preclude our considering the evidence supporting NCI's position.

The District of Columbia[6] "follows the general rule that the court interprets unambiguous contractual provisions" and "does not consider extrinsic evidence, but finds the intention of the parties in the language used to express their agreement." *E.P. Hinkel & Co. v. Manhattan Co.*, 506 F.2d 201, 204 (D.C.Cir.1974). Nevertheless, "[w]hen the meaning of a contract provision is facially uncertain, a court may resort to an examination of extrinsic evidence, such as statements, course of conduct, and contemporaneous correspondence, aimed at discerning the intent of the parties." *Farmland Indus., Inc. v. Grain Bd. of Iraq*, 904 F.2d 732, 736 (D.C.Cir. 1990) (citing *Sundown, Inc. v. Canal Square Assocs.*, 390 A.2d 421, 432 (D.C.App.1978)). In applying the parol evidence rule and its exception here, we cannot consider Griffin's exercise letters in isolation but must look also to the accompanying checks and the original option agreements, to which the letters expressly refer, as well as to the assignment agreement the parties signed at the same time they signed the option agreements. *See Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 366 (D.C.1984) ("When a written agreement incorporates a second writing, the two documents must be read together as constituting the contract between the parties."); *Trans–Bay Engrs. & Builders, Inc. v. Hills*, 551 F.2d 370, 379 (D.C.Cir.1976) ("Where two or more written agreements are contemporaneously executed as part of one complete package, they should be construed together."); *Hartz v. Segner*, 165 A.2d 489, 490 (D.C.1960) (sales contract and promissory note executed contemporaneously as "an integrated part of a single

---

4. Whether he also intended to act on behalf of the remaining two assignees, himself and Naing in their individual capacities, is a question we need not address.

5. Birks has offered no authority for applying the rule to an instrument exercising an option.

6. The parties do not dispute that the governing substantive law is that of the District of Columbia. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

understanding" must be construed together to give effect to parties' intent). Read together these writings reveal an ambiguity regarding the capacity in which Griffin intended to exercise the options. The letters, insofar as they purport to exercise the option on behalf of Development, are inherently inconsistent with the assignment agreement's transfer of Development's option rights to the Trust, Naing and Griffin. The checks, on the other hand, suggest it was neither Development nor Trust but a third party, "Wynmark Properties," on whose behalf Griffin exercised the options "by paying the option price" as prescribed in the option agreements. To resolve this ambiguity, it is permissible, and necessary, to consider the extrinsic evidence which, as we have already held, raises a genuine issue of fact concerning Griffin's intent.

For the reasons set out above, the judgment of the district court is

*Reversed and Remanded.*